[Cite as *Stoner v. Salon Lofts L.L.C.*, 2014-Ohio-796.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Sean A. Stoner et al., | : | |
| Plaintiffs-Appellants, | : | No. 13AP-437 |
| | | (C.P.C. No. 10CV-13904) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Salon Lofts, LLC et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on March 4, 2014

*Cooper & Elliott, LLC, Charles H. Cooper, Jr., Rex H. Elliott* and *Adam P. Richards*, for appellants.

*Littler Mendelson, Thomas M.L. Metzger* and *Brooke E. Miedecken*, for appellees.

APPEAL from the Franklin County Court of Common Pleas

O'GRADY, J.

{¶ 1} Plaintiffs-appellants Sean A. Stoner and Buckheel Investments, LLC (collectively "appellants") appeal from a judgment of the Franklin County Court of Common Pleas granting the motion of defendants-appellees Salon Lofts, LLC, and Salon Lofts Franchising, LLC (collectively "appellees") to stay portions of this action pending arbitration. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} According to the complaint, Salon Lofts, LLC ("Salon Lofts") rented property to individuals in the hair and beauty industry to enable them to operate their own businesses. Sean A. Stoner ("Stoner") worked as general counsel and vice president

of investor relations for Salon Lofts from April 2007 until his termination on August 24, 2010. Stoner also owned 5 percent of Salon Lofts, which in turn owned Salon Lofts Franchising, LLC ("SL Franchising"), which was created for purposes of selling Salon Lofts franchises in various cities. Buckheel Investments, LLC ("Buckheel") was the Charlotte, North Carolina franchisee. At some point, Stoner paid $30,000 for the Charlotte franchise rights, but the exact nature of his relationship with Buckheel is unclear from the complaint's allegations.

{¶ 3} On September 22, 2010, appellants filed a complaint against appellees. In Count 1, Stoner alleged Salon Lofts breached his employment agreement. In Count 2, appellants alleged SL Franchising materially breached a franchise agreement and sought rescission of the agreement and the return of Stoner's $30,000. In Count 3, Stoner requested a declaratory judgment confirming his 5 percent interest in Salon Lofts and Salon Lofts' membership interest in SL Franchising.

{¶ 4} Appellants consented to two extensions of appellees' time to move, answer or otherwise plead in response to the complaint. On November 12, 2010, appellees filed an answer, counterclaims, and a jury demand. In their twelfth defense to the complaint, appellees stated: "Some or all of the claims in Plaintiffs' Complaint are subject to mandatory arbitration and should be dismissed." (R. 37, Answer and Counterclaim, 8.) Appellees also raised ten counterclaims: (1) breach of fiduciary duty and breach of duty of loyalty against Stoner; (2) violation of the Ohio Trade Secrets Act against appellants; (3) legal malpractice against Stoner; (4) tortious interference with contracts and business relationships against appellants; (5) fraud against Stoner; (6) defamation against Stoner; (7) conversion against Stoner; (8) breach of contract against Buckheel; (9) declaratory judgment; and (10) breach of contract against Stoner.

{¶ 5} Appellants filed a motion to dismiss the fraud counterclaim, which appellees opposed. Also, on January 26, 2011, the trial court issued a stipulated protective order. On February 7, 2011, appellants filed a motion to compel discovery, which appellees opposed. Appellants later agreed to withdraw their motion to dismiss and motion to compel. On April 15, 2011, appellees filed a disclosure of witnesses.

{¶ 6} The same day, appellees filed a partial motion for judgment on the pleadings or to compel arbitration and stay proceedings. Appellees filed this motion

about three months before the discovery cut-off date and over five months before the trial date.  In the motion, appellees argued Count 2 of the complaint was subject to mandatory arbitration under an area development agreement and franchise agreement.  They also argued Count 3 of the complaint was subject to mandatory arbitration under Salon Lofts' Operating Agreement.  Appellees asked the court to either dismiss Counts 2 and 3 or compel arbitration and stay proceedings as to those counts.

{¶ 7}  Appellants filed a memorandum in opposition.  They did not refute the contention that Counts 2 and 3 were arbitrable and argued appellees' counterclaims were also subject to arbitration.  Instead, appellants claimed appellees waived arbitration for the following reasons.  Appellees sought two extensions of time to respond to the complaint.  Then, instead of immediately filing a motion to stay, they filed an answer, counterclaims, and a jury demand.  They "waited seven months to seek to compel arbitration."  (R. 66, Memorandum in Opposition, 10.)  Before requesting arbitration, they served appellants with 27 interrogatories, 22 document requests, and 85 requests for admissions.  Appellees issued multiple subpoenas for records and/or a deposition.  They responded to discovery requests from appellants and took one deposition.  In all, the parties exchanged over 20,000 documents.  They entered into a protective order and engaged in "copious amounts" of discovery communication.  (Memorandum in Opposition, 5.)  They also began the process of scheduling additional depositions. Appellees filed a disclosure of witnesses, and, on April 18, 2011, they participated in a status conference without mentioning their "intent to move to stay the proceedings and compel arbitration." (Memorandum in Opposition, 4.)  On April 21, 2011, appellants began to take the deposition of Daniel Sadd, Salon Lofts' owner and managing member, without objection.  Additionally, the parties engaged in motion practice, and appellees threatened to file other motions.  Appellants also complained arbitration would not be speedy or inexpensive.

{¶ 8}  In response, appellees argued they did not waive arbitration.  They pointed to the fact they asserted an arbitration defense in their answer and filed the motion to stay about five months after their answer.  In addition, appellees argued the vast majority of discovery related to Count 1 of the complaint, which the parties agreed was not arbitrable. They also claimed the written discovery exchanges and depositions would have occurred

even if the matter started in arbitration.  Appellees also contended appellants did not allege appellees' actions prejudiced them.

{¶ 9}  Before the trial court ruled on the motion to stay, other proceedings occurred in the case.  For instance, appellees filed a motion for a temporary restraining order and a preliminary injunction against Stoner.  The trial court granted the injunction, and Stoner appealed to this court.  We affirmed.  *Stoner v. Salon Lofts, L.L.C.*, 10th Dist. No. 11AP-838, 2012-Ohio-3269.

{¶ 10} On April 25, 2013, over two years after appellees filed the motion to stay, the trial court ruled Counts 2 and 3 were subject to arbitration.  The court found the eighth counterclaim was subject to arbitration to the extent it sought monetary damages, as opposed to injunctive relief.  The court found the totality of the circumstances did not establish waiver.  Specifically, appellees "timely moved to stay pending arbitration within five months of the filing of their Answer and Counterclaim[s]."  (R. 183-84, Apr. 25, 2013 Decision and Entry, 6.)  According to the trial court, "courts have routinely held that the filing of a responsive pleading and participation in minimal discovery is insufficient to constitute a waiver of a party's right to compel arbitration."  (Decision and Entry, 6-7.)  The court also found appellees asserted, and appellants "have not denied, that the vast majority of the discovery exchanged during the five months * * * related to Count I, which is not subject to the arbitration provisions at issue." (Decision and Entry, 7.)  Additionally, the court stated appellants did not allege, nor did the court find, any prejudice to appellants from the five-month period between appellees' responsive pleading and motion to stay.  The trial court stayed proceedings on Counts 2 and 3 and any claim for monetary damages under the eighth counterclaim pending arbitration.

## II. ASSIGNMENT OF ERROR

{¶ 11} Appellants appeal and present one assignment of error for our review:

> The Trial Court erred in granting Defendants' Partial Motion for Judgment on the Pleadings or to Compel Arbitration and Stay Proceedings.

## III. DISCUSSION

{¶ 12} Under the sole assignment of error, appellants contend the trial court erred when it rejected their waiver argument and partially stayed proceedings pending arbitration.

{¶ 13} "Both the Ohio General Assembly and Ohio courts have expressed a strong public policy favoring arbitration." *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, ¶ 15, citing R.C. Chapter 2711, *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, ¶ 27, and *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 471 (1998). " 'Arbitration is favored because it provides the parties thereto with a relatively expeditious and economical means of resolving a dispute.' " *Kelm v. Kelm,* 68 Ohio St.3d 26, 29 (1993), quoting *Schaefer v. Allstate Ins. Co.*, 63 Ohio St.3d 708, 712 (1992). "Arbitration also has the additional benefit of unburdening crowded court dockets." *Hayes* at ¶ 15, citing *Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities v. Mahoning Cty. TMR Edn. Assn.*, 22 Ohio St.3d 80, 83 (1986). "In light of the strong presumption favoring arbitration, all doubts should be resolved in its favor." *Id.*, citing *Ignazio v. Clear Channel Broadcasting, Inc.*, 113 Ohio St.3d 276, 2007-Ohio-1947, ¶ 18.

{¶ 14} "The General Assembly has endorsed the strong policy in favor of arbitration of disputes in R.C. 2711.01(A), which provides that an arbitration agreement 'shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract.' " *Id.* at ¶ 16. R.C. 2711.02 provides for enforcement of an arbitration agreement. A party to such an agreement may obtain a stay of litigation in favor of arbitration under R.C. 2711.02(B), which states:

> If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.

Moreover, an order under R.C. 2711.02(B) that grants or denies a stay of a trial pending arbitration "is a final order and may be reviewed, affirmed, modified, or reversed on

appeal pursuant to the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code." R.C. 2711.02(C).

{¶ 15} Our standard of review for a R.C. 2711.02(B) order depends on the nature of the issues involved. *See Dispatch Printing Co. v. Recovery Ltd. Partnership*, 10th Dist. No. 10AP-353, 2011-Ohio-80, ¶ 17. Here, the issue is whether appellants waived the right to arbitrate. "The right to arbitration may be waived just like any other contractual right." *Id.* at ¶ 19, citing *Murtha v. Ravines of McNaughton Condominium Assn.*, 10th Dist. No. 09AP-709, 2010-Ohio-1325, ¶ 20. " ' "[T]he question of waiver is usually a fact-driven issue and an appellate court will not reverse" the trial court's decision "absent a showing of an abuse of discretion." ' " *Morris v. Morris*, 189 Ohio App.3d 608, 2010-Ohio-4750, ¶ 17 (10th Dist.), quoting *Murtha* at ¶ 20, quoting *ACRS, Inc. v. Blue Cross & Blue Shield of Minnesota*, 131 Ohio App.3d 450, 456 (8th Dist.1998). The phrase "abuse of discretion" implies the trial court's attitude is arbitrary, unreasonable or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 16} "A party asserting waiver must prove that the waiving party knew of the existing right to arbitrate and, based on the totality of the circumstances, acted inconsistently with that known right." *Dispatch Printing Co.* at ¶ 21, citing *Murtha* at ¶ 21. "In determining whether the totality of the circumstances supports a finding of waiver, a court may consider such factors as: (1) whether the party seeking arbitration invoked the court's jurisdiction by filing a complaint or claim without first requesting a stay; (2) the delay, if any, by the party seeking arbitration to request a stay; (3) the extent to which the party seeking arbitration has participated in the litigation; and (4) whether prior inconsistent acts by the party seeking arbitration would prejudice the non-moving party." *Id.*, citing *Tinker v. Oldaker*, 10th Dist. No. 03AP-671, 2004-Ohio-3316, ¶ 20. "Waiver attaches where there is active participation in a lawsuit evincing an acquiescence to proceeding in a judicial forum." *Tinker* at ¶ 21.

{¶ 17} Appellants do not challenge the trial court's finding that Counts 2 and 3 of the complaint and appellees' eighth counterclaim, to the extent it sought monetary damages, were subject to arbitration. Instead, appellants complain the court erred when it found appellees did not waive arbitration. Appellees implicitly concede they knew of their right to arbitrate. Therefore, the central issue is whether the trial court abused its

discretion when it found, under the totality of the circumstances, appellees did not act inconsistently with their known right to arbitrate.

{¶ 18} Appellees raised the issue of arbitration in their answer, but they did not immediately request a stay. Instead, they invoked the trial court's jurisdiction by filing ten counterclaims and a jury demand. Appellants argue this action, by itself, is sufficient to support a finding of waiver. That position runs contrary to the nature of a totality of the circumstances analysis. Moreover, only one of appellees' counterclaims was arbitrable and only to the extent it sought monetary damages. *See generally Morris* at ¶ 22 (finding party's request to file a cross-claim was not inconsistent with contractual right to arbitrate because the party never actually filed the cross-claim and the cross-claim would not have been subject to arbitration).

{¶ 19} The trial court found appellees timely requested a stay within five months of filing their responsive pleading. This finding is supported by the fact that appellees made their request about three months before the discovery cut-off date, before any dispositive motions were filed, and over five months before the trial date. Appellants argue courts have found waiver where a party filed a motion to stay earlier than appellees did. However, in the case appellants cite for this proposition, the movant was the same party who filed the complaint. *Farrow Builders, Inc. v. Slodov*, 11th Dist. No. 2000-G-2288 (June 29, 2001).

{¶ 20} Next, appellants contend appellees extensively participated in the litigation process. Appellants highlight the fact that appellees sought and received two extensions to answer, move or otherwise plead. However, we fail to see how a request for more time to respond to a complaint is inherently inconsistent with the pursuit of arbitration.

{¶ 21} Appellants complain the parties engaged in substantial discovery on Counts 2 and 3. In support of this claim, appellants quote various discovery requests appellees either served or responded to without objection. Appellants claim the parties exchanged around 20,000 documents, "many of which were directly related" to Counts 2 and 3. (Appellants' brief, 29.) Appellants also claim the majority of the parties' communications about discovery related to Counts 2 and 3, and the parties entered into a protective order adopted by the trial court. In addition, appellants complain appellees issued several broadly-worded subpoenas to third-parties that required production of documents related

to Counts 2 and 3. Appellees also sought to depose the subpoenaed third-parties, but appellants admit the depositions never took place. Appellants also complain the one deposition completed before appellees filed the motion to stay, that of Jeffrey Wilkins, concerned "almost exclusively" issues related to Count 2. (Appellants' brief, 19.) In a footnote, appellants claim after appellees filed their motion, "a second deposition of Mr. Wilkins was conducted on additional issues related to" Counts 2 and 3. (Appellants' brief, 19, fn. 3.)

{¶ 22} As the trial court found, appellees asserted, and appellants "have not denied, that the vast majority of the discovery exchanged [is] * * * related to Count I, which is not subject to the arbitration provisions at issue." (Decision and Entry, 7.) Moreover, appellants have the burden to prove waiver, and it is not clear how much of the discovery and protection order related solely to arbitrable claims, particularly when according to appellants, Counts 1 and 3 "overlap significantly" and the record does not contain Wilkins' deposition transcripts. (Appellants' brief, 9.)

{¶ 23} Appellants argue after appellees filed the motion to stay, on April 21, 2011, appellants deposed Sadd without objection, and he testified regarding all of the claims in the complaint. But the record does not contain Sadd's deposition transcript. According to appellants, the parties also began to schedule depositions of seven individuals whose testimony would have related to Counts 2 and 3. However, we do not know what those individuals would have testified about. Appellants also complain on April 18, 2011, appellees participated in a status conference "without mentioning their intent to move to stay the proceedings and compel arbitration." (Appellants' brief, 30.) We fail to see how appellees' failure to explicitly mention a motion they already filed and served on appellants demonstrates waiver.

{¶ 24} Next, appellants generally cite over 115 items in the record as proof appellees actively litigated Counts 2 and 3 after filing the motion to stay. Appellants did not make this argument at the trial level and cannot make it for the first time on appeal. *Amare v. Chellena Food Express, Inc.*, 10th Dist. No. 08AP-678, 2009-Ohio-147, ¶ 14, quoting *Ohio Civ. Rights Comm. v. Triangle Real Estate Serv., Inc.*, 10th Dist. No. 06AP-157, 2007-Ohio-1809, ¶ 11.

{¶ 25} Moreover, it is apparent many of the documents cited relate to non-arbitrable issues, such as the preliminary injunction.

{¶ 26} Appellants also complain appellees filed a disclosure of witnesses, and two people named are "key witnesses" for Counts 2 and 3. (Appellants' brief, 19.) Because not all of the claims in this lawsuit are arbitrable, filing a disclosure of witnesses is not necessarily inconsistent with the pursuit of arbitration. Even if some of the named witnesses possess information on the arbitrable claims, that does not necessarily mean they lack knowledge of the non-arbitrable claims.

{¶ 27} In addition, appellants argue appellees participated in motion practice at the trial level, particularly with regard to appellants' motions to compel and to dismiss the fraud counterclaim. However, the fraud claim was not arbitrable. Moreover, the trial court was free to not place great weight on the motion to compel litigation. Appellants also argue appellees threatened to invoke the court's jurisdiction by filing other motions. We are not persuaded an unfulfilled threat to file a motion constitutes an act inconsistent with pursuit of arbitration.

{¶ 28} Next, appellants contend arbitration runs contrary to public policy in this case because arbitration would not be economical or expeditious. They suggest the time and expense to arbitrate now would prejudice them. Specifically, appellants claim Counts 1 and 3 are intertwined and arbitration will "cause nearly double the expense to the parties." (Appellants' brief, 46.) Appellants also argue "having two different decision makers deciding the same issues * * * will place the parties at risk of incurring double or inconsistent obligations and could cast doubt on the integrity of arbitration as well as the arbitrator's acts." (Appellants' brief, 10.) In addition, appellants complain it does not make sense to "thrust" this matter into arbitration more than two and one-half years after they filed the complaint when appellees' "delay" in filing the motion to stay "likely caused the nearly two-year delay" in the trial court ruling on the motion. (Appellants' brief, 46.)

{¶ 29} The trial court found appellants did not allege any prejudice, and the trial court did not find any. Although appellants generally claimed arbitration would not be an inexpensive or quick resolution to the parties' conflict, appellants did not make any of the more specific arguments they now make on appeal and thus waived them. Moreover, any risk of inconsistent decisions due to the existence of arbitrable and non-arbitrable claims

did not compel the trial court to ignore the arbitration provisions and deny the motion to stay.  *See Harrison v. Winchester Place Nursing & Rehab. Ctr.*, 10th Dist. No. 12AP-327, 2013-Ohio-3163, ¶ 19-26.  While the trial court's delay in deciding the motion to stay is unfortunate, we cannot assume the delay is solely attributable to the timing of when appellees filed the motion.  At least some of the delay is attributable to the extensive litigation, including an appeal, on the non-arbitrable preliminary injunction issue.

{¶ 30} We find nothing unreasonable, arbitrary or unconscionable in the trial court's finding that appellees did not prejudice appellants. While arbitration might entail additional expenses, such as a fee for the arbitrator, those expenses would have existed even if appellees immediately filed a motion to stay.  As appellees point out, the discovery that has already occurred in this case might be useful in arbitration.[1]

{¶ 31} Based on the foregoing, we conclude the trial court did not abuse its discretion in finding that, based on the totality of the circumstances, appellees did not act inconsistently with their right to arbitrate.  In their answer, appellees notified appellants of an arbitration defense. Appellees did file a partially arbitrable counterclaim and did not immediately request a stay. But they requested a stay several months before the discovery cut-off and trial dates and before any dispositive motions were filed.  Appellees actions did not prejudice appellants.  And though appellees participated in the litigation process, it is unclear exactly how much of that process related solely to arbitrable, as opposed to non-arbitrable, claims. Moreover, we cannot say appellees' participation, when weighed against other factors, was so substantial as to render the trial court's decision unreasonable, arbitrary or unconscionable.

{¶ 32} Accordingly, the trial court did not err when it rejected appellants' waiver argument, and we overrule the sole assignment of error.

 IV. CONCLUSION

{¶ 33} Although the parties do not raise the issue, the trial court erred by only staying part of the proceedings instead of the entire proceeding pending arbitration.  R.C. 2711.02; *Gordon v. OM Financial Life Ins. Co.*, 10th Dist. No. 08AP-480, 2009-Ohio-814,

---

[1] Appellees argue the lack of prejudice is evidenced by a demand for arbitration appellants filed in February 2013.  Although appellees included a copy of this demand in an appendix to their appellate brief, the document is not part of the record on appeal, so we disregard it.

¶ 17, quoting *Cheney v. Sears, Roebuck & Co.*, 10th Dist. No. 04AP-1354, 2005-Ohio-3283, ¶ 12 (stating that " '[p]ursuant to R.C. 2711.02, when an action involves both arbitrable and non-arbitrable claims, the entire proceeding must be stayed until the issues that are subject to arbitration are resolved' ").   Therefore, we reverse the trial court's judgment to the extent the court stayed only a portion of the proceedings and remand for the court to enter an order staying the entire action until arbitration has been had in accordance with the agreements at issue.

{¶ 34} For the foregoing reasons, appellants' sole assignment of error is overruled and we affirm the trial court's judgment in part, reverse it in part, and remand for further proceedings consistent with this decision.

*Judgment affirmed in part,*
*reversed in part, and cause remanded.*

**KLATT and CONNOR, JJ., concur.**

_____