[Cite as *Doe v. Vineyard Columbus*, 2014-Ohio-2617.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Jane Doe et al., | : | |
| Plaintiffs-Appellees, | : | |
| | : | No. 13AP-599 |
| v. | : | (C.P.C. No. 11CV-10856) |
| Vineyard Columbus, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on June 17, 2014

*Weston Hurd LLP,* and *W. Charles Curley,* for appellant.

*Hollern & Associates,* and *Edwin J. Hollern,* for appellees.

APPEAL from the Franklin County Court of Common Pleas

CONNOR, J.

{¶1} Defendant-appellant, Vineyard Columbus ("Vineyard"), appeals from a decision from the Franklin County Court of Common Pleas denying its motion to stay the case and compel arbitration. For the following reasons, we affirm the judgment of the Franklin County Court of Common Pleas.

I. Procedural History

{¶2} Plaintiffs-appellees, Jane and John Doe, individually and on behalf of their minor children (John Doe II, III, IV, and Jane Doe II and III) ("appellees"), filed an action against Vineyard Columbus and Steven Robbins, a senior pastor at the church, for assault and battery, negligent hiring and retention, negligent failure to supervise, intentional infliction of emotional distress, failure to protect from pastoral abuse, loss of spousal consortium, loss of parental consortium and negligence as a result of a sexual relationship between the senior pastor and Jane Doe when she sought counseling for a history of

sexual abuse. Vineyard filed a motion to stay the case and to compel arbitration. Robbins filed a petition for bankruptcy, which automatically stayed the case. Once the stay was lifted, the trial court conducted a hearing on the motion to stay and to compel arbitration.

{¶3} The trial court determined that there was no meeting of the minds regarding arbitration and appellees had not agreed to arbitration. Thus, the trial court denied the motion to stay and to compel arbitration. Vineyard filed a timely appeal.

## II. Assignment of Error

{¶4} On appeal, Vineyard assigns the following error for our review:

> The trial court erred by denying Vineyard Columbus's motion to stay the case and to compel arbitration.

## III. Facts

{¶5} In 2006, appellees read and completed applications to become members of the Vineyard. (Exhibit Nos. 1 and 2.) The application included a "Statement of Practice," as follows:

> In order to accomplish the mission of Vineyard Church of Columbus, I commit myself to the following practices:
>
> * * *
>
> 3. Committed to Vineyard Columbus' statements, our strategy, our structure and Vineyard's disciplinary and dispute resolution process.

{¶6} Rich Nathan, the senior pastor at Vineyard for 25 years, testified that, to become a member of the church, one must complete the application and attend a Newcomer's class.

{¶7} At the Newcomer's class, potential members are presented with a booklet containing a written "Disciplinary and Dispute Resolution Process" ("policy") in an appendix. The policy provides, in relevant part, as follows:

> All claims and disputes of every kind and nature between any person who is or was a Member and the Church (including any dispute between a Member or former Member and any person acting on behalf of the Church or in the capacity as a representative of the Church or its ministries) shall be settled solely by biblically based mediation and, if necessary, by legally binding arbitration, in each case conducted in accordance with the Rules of Procedure for Christian

Conciliation of the Institute for Christian Conciliation. By submitting an application for Church membership, each Member understands, agrees, consents and acknowledges that such methods are and shall be, notwithstanding any later resignation or termination of membership in the Church, the sole remedies for resolving all claims, disputes and controversies between the Church and a Member or former Member of every kind, and nature, including without limitation any claim, dispute or controversy arising out of or associated with Church discipline imposed pursuant to this Code of Regulations, and by submitting an application for membership each Member does expressly waive all of his or her present and future rights to file a lawsuit in any civil court against the Church with respect to any claim or dispute of any kind or nature.

{¶8} Although Vineyard had developed this biblically-based mediation dispute resolution process in the early 1990s, Vineyard was unable to produce a copy of the Newcomer's booklet containing the policy used before 2012 at the hearing. The Newcomer's booklet was revised in 2012 and all previous versions were unavailable. (Tr. 46-47.)

{¶9} In his affidavit, Nathan stated that he personally conducted the Newcomer's Class that appellees attended in which he discussed the disciplinary and dispute resolution process at the Newcomer's class and he distributed the booklet at the class. However, when he testified at the hearing, Nathan admitted he did not teach every Newcomer's class offered and he had no specific memory of the class appellees attended in 2006. He admitted that occasionally, Steve Van Dop would teach the class. (Tr. 42.) He admitted he did not read the arbitration clause to the classes, but it is available for newcomers to read in the appendices of the Newcomer's booklet. (Tr. 57-58.) He also admitted that the booklet had changed since appellees attended the class and no copies used prior to 2012 were available. (Tr. 63-66.)

{¶10} Appellees argue that they never agreed to the policy or to any arbitration agreement. Although they concede they signed the application, they argue that there was no reference in the application to the disciplinary and dispute resolution process nor is it defined in the application. Appellees submitted their affidavits and testified at the hearing that the disciplinary and dispute resolution process was not discussed at the Newcomer's class they attended; Nathan did not conduct the class they attended but,

rather, Steve Van Dop conducted the class. They never received the Newcomer's booklet or a copy of the disciplinary and dispute resolution process. Finally, Jane Doe testified that, if they had been informed of the policy, they would not have agreed to the terms or submitted their applications to be members of the church because she would have viewed it as a red flag. (Tr. 26.)

{¶11} Vineyard did submit an affidavit post-hearing from a church member who stated she attended the same class as appellees. She stated that the attendees received the Newcomer's booklet and that Nathan had conducted the class and he mentioned that Vineyard had its own dispute resolution process.

## IV. Discussion

{¶12} By its assignment of error, Vineyard contends that the trial court erred by denying its motion to stay the case and to compel arbitration. The trial court found that appellees did not agree to any form of binding arbitration by signing the application. Vineyard did not provide appellees with a contract that contained all of the material terms and the contract did not incorporate the terms by reference. Finding no meeting of the minds, the trial court found there was no contract or agreement and denied the motion to stay and to compel arbitration.

{¶13} Appellate courts traditionally use the abuse of discretion standard of review when reviewing an appeal from a motion to dismiss or stay pending arbitration. *See Peters v. Columbus Steel Castings*, 10th Dist. No. 05AP-308, 2006-Ohio-382; *Pyle v. Wells Fargo Fin.*, 10th Dist. No. 05AP-644, 2005-Ohio-6478, ¶ 11. This court has held that the de novo standard of review is proper when the appeal presents a question of law. *Peters*, citing *Von Arras v. Columbus Radiology Corp.*, 10th Dist. No. 04AP-934, 2005-Ohio-2562, ¶ 8; *Dunkleman v. Cincinnati Bengals, Inc.*, 158 Ohio App.3d 604, 2004-Ohio-6425, (1st Dist.) ¶ 18-20. *See also Khoury v. Denney Motors Assoc., Inc.,* 10th Dist. No. 06AP-1024, 2007-Ohio-5791.

{¶14} Courts generally encourage arbitration as a method to settle disputes. *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464 (1998). "A presumption favoring arbitration arises when the claim in dispute falls within the scope of the arbitration provision." *Id.* at 471. "An arbitration clause in a contract is generally viewed as an expression that the parties agree to arbitrate disagreements within the scope of the

arbitration clause, and, with limited exceptions, an arbitration clause is to be upheld just as any other provision in a contract should be respected." *Id.* "An arbitration agreement will be enforced unless the court is firmly convinced that (1) the clause is inapplicable to the dispute or issue in question or (2) the parties did not agree to the clause." *Estate of Brewer v. Dowell & Jones*, 8th Dist. No. 80563, 2002-Ohio-3440, ¶ 7, citing *Ervin v. Am. Funding Corp.* 89 Ohio App.3d 519 (12th Dist.1993).

{¶15}   In *Council of Smaller Ents. v. Gates, McDonald & Co.,* 80 Ohio St.3d 661 (1998), the Supreme Court of Ohio adopted principles for evaluating whether a dispute is arbitrable.  The court must first determine whether the parties agreed to submit a matter to arbitration, a question typically raising a question of law for the court to decide.  *Id.* Arbitration is a matter of contract and a party cannot be required to submit a dispute to arbitration when it has not agreed to do so.  *Academy of Med. of Cincinnati v. Aetna Health, Inc.,* 108 Ohio St.3d 185, 2006-Ohio-657, ¶ 11.  Thus, a court must " 'look first  to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement.' "  *Columbus Steel Castings v. Real Time Staffing Servs.*, 10th Dist. No. 10AP-1127, 2011-Ohio-3708, ¶ 13, quoting *White v. Equity, Inc.,* 191 Ohio App.3d 141, 2010-Ohio-4743, (10th Dist.) ¶ 19, quoting *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002).

{¶16}   A valid and enforceable contract requires an offer by one party and an acceptance of the offer by another party.  *Huffman v. Kazak Bros., Inc.*, 11th Dist. No. 2000-L-15, 2002-Ohio-1683, citing *Camastro v. Motel 6 Operating, L.P.*, 11th Dist. No. 2000-T-0053 (Apr. 27, 2001).  There must be a meeting of the minds to create a proper offer and acceptance.  *Id.* "In order for a meeting of the minds to occur, both parties to an agreement must mutually assent to the substance of the exchange."  *Miller v. Lindsay-Green, Inc.,* 10th Dist. No. 04AP-848, 2005-Ohio-6366, ¶ 63.  Thus, the parties must have a " 'distinct and common intention which is communicated by each party to the other.' " *Huffman* quoting *McCarthy, Lebit, Crystal & Haiman Co., L.P.A. v. First Union Mgt., Inc.,* 87 Ohio App.3d 613 (8th Dist.1993).  Therefore, " '[i]f the minds of the parties have not met, no contract is formed.' " *Id.*

{¶17}   Vineyard argues that by signing the application which included the "Statement of Practice," appellees agreed to be bound by the non-judicial resolution of all

claims. Appellees argue that the policy was not discussed at the Newcomer's meeting, they never received a copy of the policy and the application does not define the policy nor reference a copy of the policy. They contend that without knowledge of the policy, there was no agreement to arbitrate disputes.

{¶18} The trial court found the evidence supporting appellees' argument more persuasive. Nathan's testimony at the hearing conflicted with his affidavit testimony. In his affidavit, Nathan stated that he personally led the Newcomer's class that appellees attended, that he discussed the disciplinary and dispute resolution process during the class and he distributed the booklet containing the policy. However, during the hearing, Nathan testified that he did not conduct every Newcomer's class, only approximately 90 percent of the classes, and Steve Van Dop assisted in teaching the class. He admitted he had no specific memory of the class appellees attended. (Tr. 42.) More specifically, he admitted it was not his practice to read the disciplinary and dispute resolution process to the class, but the attendees are told they can look over the appendices of the booklet. (Tr. 57-58.) Nathan also discussed the fact that the booklet given to attendees had changed since appellees attended the class and there were no copies available of a pre-2012 version of the booklet. (Tr. 63-66.) Nathan never communicated that one would be waiving a right to jury trial by agreeing to the policy and he never even contemplated a situation involving sexual assault. (Tr. 69.)

{¶19} Appellees consistently denied having received a copy of the policy and testified that they did not even see the policy until shown a copy by their attorney. (Tr. 22; 37.) The trial court found the documentary evidence supported the fact that appellees did not knowingly enter into an arbitration agreement. The application to become a member included an agreement to the Vineyard disciplinary and dispute resolution process, but the application did not include policy, indicate that it was a specific policy, or reference the Newcomer's booklet where the policy was attached as an appendix in order for one to review the policy before signing and agreeing. Moreover, the application does not indicate that the policy will be explained.

{¶20} Post-hearing, Vineyard filed an affidavit from a church member who claimed to have attended the same Newcomer's class as appellees and attached a copy of the Newcomer's booklet. However, the trial court found that the affidavit does not

disprove that appellees did not receive the booklet with the policy as an attachment at the Newcomer's class. Appellees admit they signed the application without any knowledge of the actual policy as anything other than a generic policy. This church member's affidavit does not refute the argument that the policy was not incorporated by inclusion or reference and they did not receive an actual copy.

{¶21} Vineyard cites several cases in support of its argument that the trial court erred in denying its motion. In *Estate of Brewer*, supra, the plaintiffs opposed a motion to stay and to compel arbitration because they did not receive or review the "Customer Agreement" containing the arbitration clause at the time they opened their Fidelity account. Plaintiffs signed the "New Account Application" when they opened their individual accounts and the "Customer Agreement" containing the arbitration provision is "specifically identified and incorporated, in bold type-face print, in the New Account Application." *Id.* at ¶ 9. The plaintiffs also admitted that they did not read the application. The facts of *Estate of Brewer* are distinguishable from this case because the arbitration provision was specifically identified and incorporated into the application.

{¶22} Vineyard also cited *Melia v. OfficeMax North Am., Inc.*, 8th Dist. No. 87249, 2006-Ohio-4765 in support of its argument. In *Melia*, the plaintiff signed a document, titled "Fair Competition Covenant" which provided for an arbitration clause which was specifically incorporated by reference in paragraph ten. The provision in the "Fair Competition Covenant" is boldly labeled "***Arbitration***" and it sets forth that all disputes or claims arising out of recruitment, employment, cessation of employment or any claim of unlawful discrimination or harassment that arise as a result of employment are to be resolved through arbitration. Melia argued that the appendix, the arbitration agreement itself, was not attached to the "Fair Competition Covenant." The court found that the language of the "Fair Competition Covenant" was clear and unambiguous and it set forth the terms of the arbitration process, thus, the parties had made an agreement. *Melia* is distinguishable from the facts of this case because the "Fair Competition Covenant" clearly set forth the terms of the arbitration process and incorporated the arbitration policy by reference.

{¶23} Finally, Vineyard cites *Swayze v. The Huntington Invest. Co.*, 2nd Dist. No. 20630, 2005-Ohio-2519, in support of its argument. The plaintiff signed a "new account

application" and represented he had read the terms and conditions and agreed to be bound by them. The application provided in bold print that the arbitration agreement was printed on the back side of the application. Swayze argued that the back side of his copy of the application was blank and he did not read the arbitration agreement. However, the employee who had signed and approved Swayze's "new account application" stated there were three copies of the application of which two had printing on the back side. Thus, one copy was blank. The court found that Swayze was provided with a copy of the agreement and he had signed a form indicating he had read the terms and conditions and agreed to be bound by them. *Swayze* is again distinguishable from this case because in *Swayze*, the terms of the agreement were provided to the plaintiff, but the plaintiff failed to read them.

{¶24} The trial court in this case found appellees' testimony and documentation more credible than Vineyard's evidence. Such determinations of credibility and the weight to be given to the evidence are for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. "The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact, and an appellate court may not substitute its own judgment for that of the finder of fact." *Cuyahoga Metro. Housing Auth. v. Davis*, 197 Ohio App.3d 411, 2011-Ohio-6162 (8th Dist.). However, on a de novo review, we are also persuaded and find that appellees did not agree to be bound by the disciplinary and dispute resolution process utilizing a biblically-based mediation dispute resolution process. Appellees testified that the policy was never provided to them. The policy was not incorporated by reference or mentioned as a specific policy in the application. Vineyard's assignment of error is overruled.

## V. Conclusion

{¶25} For the following reasons, Vineyard's assignment of error is overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

TYACK, J. and SADLER, P.J., concur.

————————————