[Cite as *Rice v. Stuckey*, 2025-Ohio-2242.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Frederick Rice,                                              :

      Plaintiff-Appellee,                        :

                                             No. 24AP-582

v.                                                          :         (C.P.C. No. 24CV-5164)

Kent D. Stuckey et al.,                                     :         (ACCELERATED CALENDAR)

      Defendant-Appellants.                      :

---

D E C I S I O N

Rendered on June 26, 2025

---

**On brief:** *Arnold & Clifford, LLP, Damion M. Clifford*, and *Damien C. Kitte*, for appellee. **Argued:** *Damien C. Kitte.*

**On brief:** *Kent D. Stuckey*, pro se. **Argued:** *Kent D. Stuckey.*

---

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Defendant-appellant, Kent D. Stuckey, appeals from the August 21, 2024 decision and judgment entry of the Franklin County Court of Common Pleas denying his motion to dismiss and stay pending arbitration. For the following reasons, we affirm the judgment of the trial court.

## I. Facts and Procedural History

{¶ 2} According to plaintiff-appellee Frederick Rice's amended complaint filed on August 6, 2024, the following facts are alleged. Prior to March 2020, appellee and a former business partner were each a 50 percent owner of two entities: Spectrum Bethesda LLC ("SB") and Spectrum Phoenix LLC ("SP") (collectively, the "Companies"). The Companies are in the utility submetering business, which is a relatively new industry that allows multi-family property owners to allocate their properties' master meter utility bills to their

tenants, who in turn get billed by the submetering company for their own metered usage on behalf of the property owner.

{¶ 3} In March 2020, appellee's previous business partner froze appellee out of the Companies. Appellee engaged appellant, a "longtime friend and former legal colleague" of appellee, to represent appellee in his dispute with his prior business partner. (Aug. 6, 2024 Am. Compl. at ¶ 6.) According to the amended complaint, during the course of the engagement, appellant became privy to confidential and proprietary information regarding the Companies, informing appellant of the significant income distributions generated by the Companies. The amended complaint alleges that appellant then set about to obtain the 50 percent ownership interest of appellee's previous business partner for himself.

{¶ 4} In July 2020, appellee's former business partner offered to sell his interest in the Companies to appellee. According to the amended complaint, appellant strongly advised appellee to buy out his partner and then repeatedly urged appellee to let appellant join appellee as a 50 percent member of the Companies. Appellee alleges appellant convinced him that if he were allowed to purchase the 50 percent membership interest in the Companies, appellant would engage in rigorous business development and be responsible for significant growth of the Companies. Appellee further alleges appellant never advised appellee of the conflict of interest in having himself, as appellee's attorney representing him in the matter, also entering into a business transaction with appellee, his client. Appellee alleges he never gave written consent to waive such conflict, nor did appellant advise him that he should seek the advice of independent legal counsel in the matter.

{¶ 5} Ultimately, appellee's dispute with his former business partner was arbitrated by the American Arbitration Association ("AAA"), and the AAA ordered that appellee's former business partner sell his interest in the Companies to appellee, with the transaction to close by January 31, 2021. Prior to that deadline, on January 29, 2021, appellant effectuated the buyout of appellee's former business partner directly. According to the amended complaint, rather than engaging in rigorous business development and creating significant growth of the Companies as appellant assured appellee he would do, appellant did nothing. Instead, appellant simply took distributions from the Companies while appellee was working approximately 70 hours per week. In August 2022, appellant

informed appellee that he planned to retire at the end of the month, which appellant then did.

{¶ 6} In September 2023, appellant initiated an arbitration with the AAA seeking administrative rights to the Companies' checking accounts. Although appellee contested appellant's right to arbitrate any dispute with the Companies on the basis that appellant had obtained his membership interest in the Companies through fraud, appellee nonetheless agreed to mediate their disputes.

{¶ 7} On December 28, 2023, appellant and appellee participated in a mediation that resulted in a global settlement (the "Settlement") of all matters. After the mediation was concluded, appellant emailed the mediator requesting the "deal points" ("Deal Points") from the Settlement. The mediator responded to appellant with an email articulating the Deal Points, which stated as follows:

> Settled for $1.3 million.
>
> Assignment to be executed by January 2 [2024] to be held in escrow by Stratton until full payment is made. Stuckey to relinquish all partnership rights and activities and access to accounts and Rice becomes full managing partner on January 2 [2024]. Stuckey to transfer domain names and service marks and remove mail tracker.
>
> Settlement documents to be executed by January 5 [2024].
>
> Rice to pursue full funding of $1.3 million by mid March, with final deadline of May 1. Will pay earlier if funding is complete. Stuckey to assist in any documentation for loans necessary.
>
> On January 2 [2024], upon Stratton receiving assignment document, Rice to pay $20,000. To continue paying $20,000 on the second of each month until fully funded.
>
> If not fully funded by May 1 [2024], interest will start at 7% until paid in full. If not fully paid by July 1 [2024], Stuckey may accelerate balance and consider contract of settlement in breach. No prior claims or defenses may be raised.
>
> Full settlement agreement to be executed by January 5 [2024]. Full mutual releases and anti-disparagement protections.
>
> Both, please let me know if I am missing anything but I think I have all the notes included.

(Bracketed text in original.) (July 2, 2024 Compl. at ¶ 83; Aug. 6, 2024 Am. Compl. at ¶ 81, Ex. A.) The mediator's email was addressed to both appellant and counsel for appellee.

Appellant responded to the email, stating simply "[t]hank you," without any objections to any of the Deal Points as set forth in the mediator's email. (*Id*. at ¶ 84; Am. Compl. at ¶ 82, Ex. B.)

{¶ 8} According to the amended complaint, contrary to the Deal Point stating "[appellant] to relinquish all partnership rights and activities and access to accounts and [appellee] becomes full managing partner on January 2," appellant subsequently insisted that he remains a member of the Companies and would only relinquish his membership interest upon full payment of the $1.3 million settlement. (Am. Compl. at ¶ 83.)

{¶ 9} Beginning in January 2024, appellee sent a settlement agreement to appellant that conformed to the Deal Points, but appellant refused to sign it. Because of appellant's refusal to sign the settlement agreement, on January 8, 2024, appellee suggested the parties have another session with the mediator. Appellant responded, "There is nothing further to mediate at this point. We both believe the matter has been settled." (Emphasis deleted.) (*Id*. at ¶ 93.) Shortly thereafter, appellant sent another email stating, "The mediation has ended. . . . [T]he parties agree that the mediation resulted in a binding and enforceable settlement agreement. . . . Your client needs to perform or be in breach." (*Id*. at ¶ 94.) A few days later, appellant sent another email stating, "I may enforce the settlement agreement without a written agreement." (*Id*. at ¶ 95.) Then, on May 20, 2024, appellant stated, "As I communicated months ago, I have fully performed all of my obligations under the Deal Points, making the Deal Points binding." (*Id*. at ¶ 108.)

{¶ 10} Meanwhile, pursuant to the Deal Points, appellee paid appellant $20,000 each month, for a total of $140,000. Prior to the initial settlement payment, appellant stated, "I will await your client's wire transfer of $20,000, which is due today." (*Id*. at ¶ 87.) After receiving the initial $20,000 settlement payment, appellant stated, "Thank you for making the required initial wire transfer." (*Id*. at ¶ 89.) For each subsequent $20,000 payment, appellant was advised that the payment was "towards [appellee]'s purchase of [appellant's] interest in [the Companies]." (*Id*. at ¶ 98.)

{¶ 11} On July 1, 2024, appellee advised appellant that the bank was ready to fully fund the settlement and appellant needed to sign certain documents to be paid in full under the settlement. According to the amended complaint, appellant refused to sign the

settlement documents, and this is the sole reason the settlement has not been fully funded to date.

{¶ 12} On July 2, 2024, appellee filed his initial complaint against appellant, seeking enforcement of the parties' settlement agreement as set forth in the Deal Points. (*See generally* July 2, 2024 Compl.) On July 9, 2024, appellant filed his motion to dismiss and stay for arbitration. The motion asserted that appellee's claims must be dismissed because those claims were based on inadmissible "mediation communications." (*See* July 9, 2024 Mot. to Dismiss and for Arbitration Stay.) The motion also requested a stay pending arbitration pursuant to R.C. 2711.02(B). On July 23, 2024, appellee filed a memorandum in opposition to appellant's motion.

{¶ 13} On August 6, 2024, appellee filed his (first) amended complaint. The amended complaint did not add any new parties or claims; rather, the amended complaint added allegations pertaining to appellant's argument for dismissal based on the allegedly inadmissible "mediation communications." (*See generally* Aug. 6, 2024 Am. Compl.)

{¶ 14} On August 21, 2024, the trial court issued its decision and entry denying appellant's motion to dismiss and stay pending arbitration.

{¶ 15} On August 29, 2024, appellant filed a motion to strike, dismiss, and stay for arbitration without first seeking leave. On September 5, 2024, appellant filed a motion to vacate or reconsider the trial court's August 21, 2024 decision and entry. None of the foregoing motions were ruled upon by the trial court.

{¶ 16} On September 20, 2024, appellant filed a timely appeal from the trial court's August 21, 2024 decision and entry, which is now before us.

## II. Assignments of Error

{¶ 17} Appellant asserts the following two assignments of error for our review:

> [I.] The trial court erred by considering privileged mediation communications.
>
> [II.] The trial court erred by deciding the alleged settlement agreement was not subject to the arbitration agreement.

## III. Discussion

### A. Assignment of Error One

{¶ 18} In his first assignment of error, appellant asserts the trial court erred by considering privileged and inadmissible mediation communications in denying his motion

to dismiss.  This assignment of error is entirely bereft of merit.

{¶ 19} We begin our discussion by observing " '[i]t is well-established that an order must be final before it can be reviewed by an appellate court.   If an order is not final, then an appellate court has no jurisdiction.' " *Est. of Reardon v. OhioHealth Corp.*, 2024-Ohio-48, ¶ 7 (10th Dist.), quoting *Walburn v. Dunlap*, 2009-Ohio-1221, ¶ 13.  Thus, "[a]n appellate court must dismiss an appeal taken from an order that is not final and appealable." *Id.*, citing *Simek v. Orthopedic & Neurological Consultants, Inc.*, 2019-Ohio-3901, ¶ 42 (10th Dist.), citing *Farmers Mkt. Drive-In Shopping Ctrs., Inc. v. Magana*, 2007-Ohio-2653, ¶ 10 (10th Dist.).

{¶ 20} Generally, the denial of a Civ.R. 12(B)(6) motion to dismiss is not a final, appealable order.  *State Auto. Mut. Ins. Co. v. Titanium Metals Corp.*, 2006-Ohio-1713, ¶ 8, citing *Polikoff v. Adam*, 67 Ohio St.3d 100, 103 (1993).  This is so because "a motion to dismiss is a procedural mechanism that tests the sufficiency of the allegations in the complaint." *Id.*, citing *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548 (1992).  "When considering a Civ.R. 12(B)(6) motion, 'a trial court must examine the complaint to determine if the allegations provide for relief on any possible theory.' " *Id.*, quoting *Fahnbulleh v. Strahan*, 73 Ohio St.3d 666, 667 (1995).  " '[T]he movant may not rely on allegations or evidence outside the complaint; otherwise, the motion must be treated, with reasonable notice, as a Civ.R. 56 motion for summary judgment.' " *Id.*, quoting *State ex rel. Hanson* at 548.

{¶ 21} Notwithstanding the foregoing, appellant insists that in this case, the trial court's denial of his motion to dismiss[1] is a final, appealable order under R.C. 2505.02(B)(4) because it involves a "provisional remedy."  More specifically, appellant insists that the trial court's denial of his motion to dismiss is effectively an order requiring the disclosure and/or discovery of allegedly privileged mediation communications which are inadmissible pursuant to R.C. 2710.01(B).  As explained below, we find no merit in appellant's assertion.

{¶ 22} R.C. 2505.02(B)(4) provides as follows:

> (B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:

---

[1] Appellant filed one motion that was effectively two-pronged: a motion to dismiss, pursuant to Civ.R. 12(B)(6), and a motion to stay pending arbitration.

. . .

(4) An order that grants or denies a provisional remedy and to which both of the following apply:

(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

R.C. 2505.02(B)(4)(a) through (b).

{¶ 23} A "provisional remedy" is defined as follows:

[A] proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction, attachment, ***discovery of privileged matter***, suppression of evidence, a prima-facie showing pursuant to section 2307.85 or 2307.86 of the Revised Code, a prima-facie showing pursuant to section 2307.92 of the Revised Code, or a finding made pursuant to division (A)(3) of section 2307.93 of the Revised Code.

(Emphasis added.)  R.C. 2505.02(A)(3).

{¶ 24} As previously stated, appellant asserts that in this case, the trial court's denial of his motion to dismiss is tantamount to an order requiring the discovery of privileged matter and, therefore, arises to the grant of a provisional remedy because the Deal Points setting forth the terms of the parties' alleged settlement agreement, as alleged in the amended complaint, are mediation communications shielded from disclosure pursuant to R.C. 2710.01(B).  The term "disclosure" is defined in *Webster's Dictionary* as "the act or an instance of disclosing: the act or an instance of opening up to view, knowledge, or comprehension." *Webster's Third New International Dictionary* (1961).  That dictionary further defines "disclose" as "2a: to expose to view . . . :lay open or uncover (something hidden from view) <excavations disclosed many artifacts> b: to make known: open up to general knowledge." *Id.  See also Black's Law Dictionary* (7th Ed. 1999) (defining "disclosure" as: "The act or process of making known something that was previously unknown; a revelation of facts"); *Random House Webster's Unabridged Dictionary* (2d Ed. 1998) (defining "disclose" as: "1. to make known; reveal or uncover: to disclose a secret.

2. to cause to appear; allow to be seen; lay open to view"). In other words, the term "disclosure" means to reveal something that was hidden and not already known.

{¶ 25} The fatal flaw in appellant's position is that the Deal Points summarizing the terms of the parties' alleged settlement agreement were already in the possession of *both* appellant and appellee before the amended complaint (or initial complaint) was ever filed. Exhibits A and B of appellee's amended complaint readily and clearly evince that the post-mediation email from the mediator setting out the Deal Points was sent to both appellant, who was and continues representing himself pro se, and counsel for appellee. Therefore, including those Deal Points in the amended complaint could not and did not result in the "disclosure" (or discovery) of any information whatsoever.

{¶ 26} It follows, then, that the trial court's denial of the motion to dismiss did not result in an order for the disclosure or discovery of any information that was solely in one party's possession such that the receiving party would obtain information that he did not already possess. *See Columbus City School Dist. v. State*, 2024-Ohio-1217, ¶ 6 (10th Dist.) (finding that appellant had failed to establish that the order appealed from was a final order under R.C. 2505.02(B)(4) because "[t]he order does not direct appellant to disclose any information at this point and, therefore, fails the threshold requirement"). Therefore, the trial court's denial of the motion to dismiss does not amount to an order for the discovery of *any* matter—let alone a privileged matter—such that it arises to the grant of a provisional remedy. And because the trial court's denial of the motion to dismiss does not grant a provisional remedy, it is not a final order subject to review under R.C. 2505.02(B)(4).

{¶ 27} In the face of this rather elementary legal conclusion, and in an apparent attempt to distract from the actual issue raised by his first assignment of error—i.e., whether the trial court's denial of the motion to dismiss is a final, appealable order which this court has jurisdiction to review—appellant has filled over 14 pages of his brief with lengthy discussions of Ohio's Uniform Mediation Act (the "UMA"), set forth in Chapter 2710 of the Ohio Revised Code, and why it mandates dismissal of appellee's claims seeking enforcement of the parties' alleged settlement agreement, including lengthy arguments pertaining to the unenforceability of any agreement the parties may have entered into. We have already rejected appellant's arguments concerning the purported disclosure of allegedly privileged mediation communications, as discussed above.

Furthermore, we agree with the trial court that the remainder of appellant's arguments are premature at the pleadings stage because they go to the merits of appellant's defenses, not to the sufficiency of the allegations as pled, as required under the standard of review pursuant to Civ.R. 12(B)(6).[2]

{¶ 28} In sum, based on the foregoing, the portion of the trial court's decision and entry denying appellant's motion to dismiss is not a final, appealable order which this court may review. Accordingly, based on the foregoing, appellant's first assignment of error is dismissed for lack of jurisdiction.

### B. Assignment of Error Two

{¶ 29} In his second assignment of error, appellant asserts the trial court erred by deciding the alleged settlement agreement was not subject to the arbitration agreement. We disagree.

{¶ 30} We begin by observing that, in contrast to appellant's first assignment of error, this court has jurisdiction over the trial court's judgment denying appellant's request for a stay of proceedings pending arbitration pursuant to R.C. 2711.02. Specifically, R.C. 2711.02(B) states in relevant part: "If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court . . . shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement. " Further, R.C. 2711.02(C) provides in relevant part: "[A]n order under division (B) . . . that grants or denies a stay of a trial of any action pending arbitration . . . is a final order and may be reviewed, affirmed, modified, or reversed on appeal pursuant to the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code." *See also Asamoah v. G.M. Fin.*, 2022-Ohio-2301, ¶ 17 (10th Dist.), citing *White v. Equity, Inc.*, 2010-Ohio-4743, ¶ 15 (10th Dist.), citing R.C. 2711.02(C) ("An order granting or denying a motion for stay pending arbitration

---

[2] We observe only as an aside that even if appellee had not included the Deal Points themselves in his amended complaint, the trial court would still have been correct in finding that appellee's claims were sufficiently pled so as to withstand a motion to dismiss under Civ.R. 12(B)(6). This is so because to state a legally sufficient claim for breach of contract, all that is required at the pleading stage is to allege facts demonstrating "(1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damages or loss resulting from the breach." *See Claris, Ltd. v. Hotel Dev. Servs., L.L.C.*, 2018-Ohio-2602, ¶ 28 (10th Dist.), citing *Lucarell v. Nationwide Mut. Ins. Co.*, 2018-Ohio-15, ¶ 41. Appellee's amended complaint contains allegations supporting all the foregoing elements. Thus, even if the trial court had stricken the Deal Points (which appellant now belatedly asserts on appeal should have occurred), appellant's motion to dismiss would still have been properly denied.

is a final, appealable order."); *Mynes v. Brooks*, 2009-Ohio-5946, ¶ 13 ("R.C. 2711.02(C) permits a party to appeal a trial court order that grants or denies a stay of trial pending arbitration, even when the order makes no determination pursuant to Civ.R. 54(B)."); *Pearson v. ManorCare Health Servs.*, 2015-Ohio-5460, ¶ 63 (8th Dist.) (noting that appeal under R.C. 2711.02(C) from judgment denying motion to stay pending arbitration "is a final order from which an immediate appeal can be taken" and that "[a]s part of" that appeal, "appellants are entitled to contest the merits of any interlocutory order pertaining to the substance of the stay issue").

{¶ 31} Generally, an appellate court reviews an appeal from the denial of a motion to stay proceedings pending arbitration for an abuse of discretion. *Michigan Timber & Truss, Inc. v. Summit Bldg. Servs., L.L.C.*, 2021-Ohio-3158, ¶ 10 (10th Dist.), citing *Morris v. Morris*, 2010-Ohio-4750, ¶ 15 (10th Dist.); *Wolfe v. J. C. Penney Corp.*, 2018-Ohio-3881, ¶ 9 (10th Dist.), citing *State Dept. of Admin. Servs. v. Design Group, Inc.*, 2007-Ohio-6278, ¶ 15 (10th Dist.). "However, an appellate court employs a de novo standard of review where the appeal of a motion to stay proceedings pending arbitration presents a question of law." *Michigan Timber & Truss* at ¶ 10, citing *Morris* at ¶ 15. Therefore, " '[a] trial court's decision granting or denying a stay of proceedings pending arbitration is * * * subject to de novo review on appeal with respect to issues of law, which commonly will predominate because such cases generally turn on issues of contractual interpretation or statutory application.' " *Id.*, quoting *Morris* at ¶ 15, citing *Hudson v. John Hancock Fin. Servs.*, 2007-Ohio-6997, ¶ 8 (10th Dist.). The issue of whether a party has agreed to submit an issue to arbitration is also subject to a de novo standard of review. *Wolfe* at ¶ 9.

{¶ 32} This court has previously observed that " '[b]oth the Ohio General Assembly and Ohio courts have expressed a strong public policy favoring arbitration.' " *Stoner v. Salon Lofts, L.L.C.*, 2014-Ohio-796, ¶ 13 (10th Dist.), quoting *Hayes v. Oakridge Home*, 2009-Ohio-2054, ¶ 15, citing R.C. Ch. 2711; *Taylor Bldg. Corp. of Am. v. Benfield*, 2008-Ohio-938, ¶ 27; *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 471 (1998). Under R.C. 2711.01(A), an arbitration agreement "shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract." *Stoner* at ¶ 14, citing *Hayes* at ¶ 16. Pursuant to R.C. 2711.02, a trial court is authorized to stay an action pending arbitration if the trial court is satisfied that the issue involved in the action

is referrable to arbitration under an agreement in writing for arbitration. *Wolfe* at ¶ 10, citing *ACRS, Inc. v. Blue Cross & Blue Shield*, 131 Ohio App.3d 450, 455 (8th Dist. 1998).

{¶ 33} Notwithstanding the foregoing, when a party moves for a stay of litigation pending arbitration pursuant to R.C. 2711.02, the trial court must first determine whether the parties agreed to submit the matter to arbitration. *Campinha-Bacote v. AT&T Corp.*, 2017-Ohio-5608, ¶ 8 (10th Dist.), citing *Doe v. Vineyard Columbus*, 2014-Ohio-2617, ¶ 14 (10th Dist.). "Arbitration is a matter of contract and a party cannot be required to submit a dispute to arbitration when it has not agreed to do so." *Id.*, citing *Academy of Med. of Cincinnati v. Aetna Health, Inc.*, 2006-Ohio-657, ¶ 11. Accordingly, a court is required to " ' "look first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement." ' " *Id.*, quoting *White v. Equity, Inc.*, 2010-Ohio-4743, ¶ 19 (10th Dist.), quoting *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). We have previously stated that "at the very least, the party seeking a stay must produce authenticated copies of the entire contract on which the motion to compel arbitration was based in order to provide the trial court with sufficient evidence of the existence of a written agreement to arbitrate the disputed claims." *Wolfe* at ¶ 12, citing *ACRS, Inc.* at 457.

{¶ 34} In this case, appellant provided the trial court with copies of the Companies' operating agreements, which do indeed contain arbitration provisions. However, as the trial court rightly found, appellee's claims are not premised on the operating agreements governing the Companies at all. Instead, his "claims are based upon the December 28 Mediation Agreement, which is set forth in the 'deal points' email attached to [appellee]'s Complaint." (Aug. 21, 2024 Decision and Entry at 7.) And, as the trial court also rightly found, in none of the Deal Points is a provision that the parties agreed to arbitrate any claims relating to the settlement agreement. Therefore, as the trial court found, the arbitration provisions appellant relies upon in his motion to stay pending arbitration are simply not applicable to the claims set forth in appellee's amended complaint.

{¶ 35} Furthermore, contrary to appellant's assertion that resolving appellee's claims requires reference to the operating agreements, and thus, the arbitration provisions must apply, no such reference to those agreements is necessary in this case. The parties' settlement agreement may be enforced (or not enforced) without necessitating any reference to the operating agreements whatsoever.

{¶ 36} Based on the foregoing, the trial court did not err in finding that the parties did not agree to submit the claims set forth in appellee's amended complaint to arbitration. Thus, neither did the trial court err in finding that it could not issue an order staying the matter pending arbitration and/or compelling the parties to submit to arbitration.

{¶ 37} Accordingly, appellant's second assignment of error is overruled.

## IV. Disposition

{¶ 38} Having dismissed appellant's first assignment of error for lack of jurisdiction and having overruled appellant's second assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

JAMISON, P.J., and DORRIAN, J., concur.

————————————