OPINION *Page 2 
{¶ 1} Knowlton Construction Company ("Knowlton"), third-party defendant-appellant, appeals from a judgment of the Ohio Court of Claims, in which the court denied Knowlton's motion to compel arbitration and to dismiss and/or stay the action.
 {¶ 2} In 1992, the State of Ohio Department of Administrative Services ("state") entered into a contract with Design Group, Inc. ("Design Group"), defendant/third-party plaintiff-appellee, for Design Group to provide certain services with regard to the construction of Belmont Correctional Institution. Design Group then entered into separate subcontracts with Knowlton; Korda/Nemeth Engineering, Inc. ("Korda"), third-party defendant-appellee; and BBC M Engineering, Inc. ("BBC M"), third-party defendant-appellee, which were to provide various services in connection with the construction project. The contract between Design Group and Knowlton contained an agreement to arbitrate disputes between the parties to that contract. Neither the contract between Design Group and Korda nor the contract between Design Group and BBC M contained an arbitration provision.
 {¶ 3} In April 2006, the state filed an action in Belmont County against Design Group, alleging Design Group breached its contract and negligently designed and constructed the facility. Design Group answered and filed a counterclaim against the state. On June 15, 2006, Design Group filed a third-party complaint against Knowlton, Korda, and BBC M. Design Group's claim against Knowlton alleged breach of contract. *Page 3 
Korda and BBC M later filed cross-claims against Knowlton, alleging entitlement to damages for breach of the Design Group/Knowlton contract, negligence, and indemnification and/or contribution. The case was eventually removed to the Court of Claims.
 {¶ 4} On October 27, 2006, Knowlton filed a motion to compel arbitration between it and Design Group, Korda, and BBC M, as well as a motion to dismiss and/or stay the entire action pending arbitration. On November 13 and 14, 2006, Korda and BBC M, respectively, filed memoranda in opposition to Knowlton's motion to compel arbitration, arguing that they could not be bound to the arbitration clause in the Design Group/Knowlton contract because they were not parties to that contract. On February 20, 2007, the trial court denied Knowlton's motion, finding that, because neither Korda nor BBC M were parties to the contract containing the arbitration clause, Knowlton could not compel Korda and BBC M to enter arbitration. Knowlton appeals the judgment of the trial court, asserting the following assignment of error:
 The trial court erred in denying the motion of Knowlton Construction Company to compel arbitration and to dismiss and/or stay this action pending arbitration.
 {¶ 5} Knowlton argues in its sole assignment of error that the trial court erred in denying its motion to compel arbitration and to dismiss and/or stay this action pending arbitration. Generally, when reviewing whether a trial court has properly granted or denied a motion to stay proceedings and compel arbitration, the standard of review is abuse of discretion. Tinker v. Oldaker, Franklin App. No. 03AP-671,2004-Ohio-3316, at ¶ 18. Interpreting the meaning and construction of contracts, however, requires an appellate court to review questions of law de novo. Holt Co. of Ohio v. Ohio Machinery Co., Franklin *Page 4 
App. No. 05AP-1280, 2007-Ohio-2870, at ¶ 14, citing West v. HouseholdLife Ins. Co., Franklin App. No. 06AP-906, 2007-Ohio-845, at ¶ 7. Although Ohio public policy generally favors arbitration as a means to settle disputes, Schaefer v. Allstate Ins. Co. (1992),63 Ohio St.3d 708, 711-712, this policy will be disregarded in instances where "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."Gibbons-Grable Co. v. Gilbane Bldg. Co. (1986), 34 Ohio App.3d 170, 173. Indeed, where the party resisting arbitration is not a signatory to any written agreement to arbitrate, a presumption against arbitration arises. Council of Smaller Enterprises v. Gates, McDonald Co. (1998),80 Ohio St.3d 661, 667.
 {¶ 6} We interpret a contract to carry out the intent of the parties.Lewis v. Mathes, 161 Ohio App.3d 1, 2005-Ohio-1975, at ¶ 18, citingAultman Hosp. Assn. v. Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51,53. The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement. Kelly v. Med. Life Ins.Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. Where a contract is clear and unambiguous, its interpretation is a matter of law. Mathes, supra, at ¶ 19, citing Inland Refuse Transfer Co. v.Browning-Ferris Industries of Ohio, Inc. (1984), 15 Ohio St.3d 321, 322. Thus, where the terms in an existing contract are clear and unambiguous, the court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties.Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, 246. A reviewing court should give the contract's language its plain and ordinary meaning unless some other meaning is evidenced within the document. Id. *Page 5 
 {¶ 7} The contract between Design Group and Knowlton provides, in pertinent part:
 4.5. Claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or the breach thereof shall be subject to and decided by arbitration in accordance, with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise.
The contract further provides:
 4.7 No arbitration arising out of or relating to this Agreement shall include, by consolidation, joinder or in any other manner, an additional person or entity not a party to this Agreement except by written consent containing a specific reference to this Agreement and signed by the Architect, Consultant and any other person or entity sought to be joined. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of any claim, dispute or other matter in question not described in the written consent or with a person or entity not named or described therein. The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by the parties to this Agreement shall be specifically enforceable in accordance with applicable law in any court having jurisdiction thereof.
 {¶ 8} Knowlton's first argument is that the above provision clearly compels arbitration between Knowlton and Design Group. Design Group acknowledged in the court below and in the present appeal that it is subject to the arbitration provision of the contract. The trial court did not clearly indicate in its judgment that Design Group's claims against Knowlton were subject to arbitration based upon the agreement but only specifically found that the arbitration provision did not apply to the claims brought by Korda and BBC M against Knowlton. After reviewing the trial court's judgment, we cannot discern if the trial court intended to implicitly find the agreement bound Design *Page 6 
Group and Knowlton to arbitration. Therefore, given the vagueness of the trial court's decision, we will sustain appellant's assignment of error as it pertains to arbitration between Knowlton and Design Group.
 {¶ 9} In addressing whether the arbitration provision in the contract applied to the claims brought by Korda and BBC M against Knowlton, the Court of Claims determined that Section 4.7 of the contract prohibited Korda and BBC M from participating in any arbitration without Design Group's, Korda's, and BBC M's written consent. Because Design Group, Korda, and BBC M oppose including Korda and BBC M in arbitration, the court found Section 4.7 precludes Korda and BBC M from participating in arbitration. After reviewing the contract at issue, we find the language of Section 4.7 is unambiguous. The contract between Design Group and Knowlton could be no clearer. Section 4.7 specifically prohibits any arbitration relating to the agreement between Design Group and Knowlton to include any additional entities not a party to the agreement, except by written consent signed by the entity sought to be joined. Neither Korda nor BBC M were parties to the Design Group/Knowlton agreement, and neither supplied written consent to be joined in arbitration. Therefore, based upon Section 4.7 of the contract, Korda and BBC M could not be compelled to participate in arbitration.
 {¶ 10} Knowlton's main counterargument is that Korda and BBC M cannot seek damages for themselves for the alleged breach of the Design Group/Knowlton contract while simultaneously disavowing the obligations, i.e., arbitration, under the contract. Knowlton contends that, even though Korda and BBC M were non-signatories to the contract, they can still be held to an arbitration provision in the contract under equitable estoppel because they are seeking damages under the contract based upon Knowlton's *Page 7 
breach thereof. Knowlton is correct that courts have found there exist exceptions to the rule that non-signatories cannot be compelled to arbitrate a dispute that they did not agree in writing to submit to arbitration, including estoppel. See, e.g., Thomson-CSF, S.A. v. Am.Arbitration Assn. (C.A.2, 1995), 64 F.3d 773, 776. Under an estoppel theory, a non-signatory who knowingly accepts the benefits of an agreement is estopped from denying a corresponding obligation to arbitrate. Id., at 778.
 {¶ 11} However, initially, it is important to recognize that Korda's and BBC M's claims do not depend solely upon Knowlton's breach of the construction contract, but, also, upon the theories of negligence, indemnity, and contribution. Neither the negligence claims nor indemnification/contribution claims alleged by Korda and BBC M are necessarily dependent upon the Design Group/Knowlton contract but may exist independently of that relationship. Furthermore, even if it could be said that one who seeks a benefit under certain provisions of a contract must be bound by all provisions under that contract, Section 4.7 still prohibits any entity not a party to the contract from being included in arbitration without written consent, and Korda and BBC M are not parties to the agreement. The agreement fails to mention any exceptions to this rule, particularly an exception that entities seeking to enforce any provision of the agreement may be subject to arbitration. If Knowlton had desired such an exception, it could have incorporated it into the agreement. See, e.g., Richter v. Moreland, Warren App. No. CA2005-03-031, 2006-Ohio-2946, at ¶ 26 (if the parties to the contract would have desired to include certain provisions in their contract, they could have easily done so).
 {¶ 12} Knowlton primarily relies upon Gerig v. Kahn,95 Ohio St.3d 478, 2002-Ohio-2581, to support its proposition that non-signatories to a contract containing an *Page 8 
arbitration provision may be compelled to arbitrate under certain circumstances. In Gerig, the plaintiffs, suing in malpractice, sought to enforce a contract between a hospital and a negligent doctor regarding insurance coverage. The Ohio Supreme Court held that, because the non-signatory plaintiffs were seeking the enforcement of a contract from which they would derive a benefit, that is, funds from which to recover damages, they were bound by the arbitration agreement contained within the insurance contract between the doctor and the hospital.
 {¶ 13} However, we find Gerig distinguishable for several reasons. Pursuant to Thomson-CSF, S.A., supra, which was relied upon by the Ohio Supreme Court in Gerig, the benefit sought to be accepted by the non-signatory must be one under the contract containing the arbitration clause. In the present case, as mentioned above, Korda's and BBC M's complaint contains causes of actions sounding in negligence and indemnity/contribution, which may be wholly independent of the Design Group/Knowlton contract. Compelling Korda and BBC M to arbitrate claims unrelated to the contract between Knowlton and Design Group would be inconsistent with the firm tenet prohibiting non-signatories from being forced to arbitrate claims they never agreed to arbitrate.
 {¶ 14} In addition, there is no indication that the arbitration provision in Gerig contained the same unmistakable language, as is present in the current case, that unequivocally prohibited non-parties to the agreement from being subject to arbitration. In effect, the Ohio Supreme Court in Gerig was determining an issue that, in the present case, Knowlton and Design Group already clearly decided in their contract. By agreeing to the strict language in the current contract, Knowlton essentially contracted away its rights to include non-signatories in arbitration. This is not a situation, as the Ohio *Page 9 
Supreme Court expressed in Gerig, at 482, in which the non-signatory is inequitably determining the forum in which an agreement is interpreted. Knowlton and Design Group determined the arbitration issue in their agreement. As mentioned above, if Knowlton desired exceptions to be included in Section 4.7, it could have easily indicated such through explicit language of the contract. Fundamental principles of contract law hold that parties to a commercial transaction are free to govern their own affairs. Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins.Co. (1989), 42 Ohio St.3d 40, 42. We do not believe Knowlton should be permitted to eschew the terms of the agreement into which it voluntarily entered merely because such might suit their benefit in the present proceedings. Coupling these distinguishing characteristics with the presumption against arbitration when a non-signatory resists arbitration, we are not persuaded that the estoppel principal discussed in Gerig applies to the present case. Thus, Gerig does not provide any reason for this court to ignore the well-established rules of contract interpretation and go outside the four corners of the contract when the contract language is clear and unambiguous. Therefore, Knowlton's assignment of error is sustained, insofar as Design Group and Knowlton are subject to the arbitration provision in their contract, but is overruled insofar as neither Korda nor BBC M are subject to such arbitration provision.
 {¶ 15} Knowlton argues in its second argument that the trial court erred when it failed to stay the action between all parties pending arbitration. The standard of review for a decision to deny a motion to stay the proceedings pending arbitration is abuse of discretion.Harsco Corp. v. Crane Carrier Co. (1997), 122 Ohio App.3d 406. "Abuse of discretion" connotes more than an error of law or judgment; it implies that the court's *Page 10 
judgment is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 16} R.C. 2711.02 provides, in pertinent part:
 (B) If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.
 {¶ 17} Knowlton initially argued in its appellate brief that the entire action between all parties, including the action between the state and Design Group, should be stayed pending arbitration. However, at oral argument before this court, counsel for Knowlton conceded that, if any arbitration is ordered on any of the claims against Knowlton, then the only stay should be as to the claims against Knowlton; thus, the state should be permitted to proceed with its claims against Design Group, and Design Group should be permitted to proceed with its claims against the other appellees and the state. We agree that this is the most logical course of proceedings. Therefore, because we have found that there exist issues between Design Group and Knowlton that are subject to arbitration, we find a stay should be ordered, pursuant to R.C. 2711.02, as to the actions between Korda and Knowlton and between BBC M and Knowlton. The course of the remaining proceedings, including whether any party may participate in discovery matters, is within the discretion of the trial court. For these reasons, Knowlton's second argument is well-taken, and its assignment of error is sustained in part and overruled in part. *Page 11 
 {¶ 18} Accordingly, Knowlton's sole assignment of error is sustained in part and overruled in part, and the judgment of the Ohio Court of Claims is affirmed in part and reversed in part.
Judgment affirmed in part and reversed in part.
BRYANT and BOWMAN, JJ., concur.
BOWMAN, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 1