[Cite as *One Lifestyle, Ltd. v. Mohiuddin*, 2021-Ohio-1594.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| One Lifestyle, Ltd. et al., | : | |
| Plaintiffs-Appellees, | : | No. 20AP-72 |
| | | (C.P.C. No. 19CV-6049) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Khaleel Mohiuddin, | : | |
| Defendant-Appellant. | : | |

NUNC PRO TUNC
D E C I S I O N[1]

Rendered on May 7, 2021

**On brief:** *Vorys, Sater, Seymour, and Pease, LLP, Robert A. Harris, and Oliver D. Frey*, for appellees. **Argued:** *Oliver D. Frey.*

**On brief:** *Roetzel & Andress, LPA*, and *Christopher W. Tackett,* for appellant. **Argued:** *Christopher Tackett.*

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Defendant-appellant, Khaleel Mohiuddin, appeals from the January 6, 2020 decision and entry of the Franklin County Court of Common Pleas granting the motion of plaintiffs-appellees, One Lifestyle, Ltd., Builder's Resource Group, Inc., and Lifestyle Residential Properties, Ltd., to compel arbitration and stay proceedings. For the reasons that follow, we affirm the judgment of the court of common pleas.

**I. Facts and Procedural History**

---

[1] Original decision inaccurately identified counsel for Appellees.

{¶ 2}   According to the Amended Complaint filed in this case, appellees One Lifestyle, Ltd., Builder's Resource Group, Inc., and Lifestyle Residential Properties, Ltd. (collectively "Lifestyle") are affiliated entities that develop residential communities and do business as Lifestyle Communities. Appellant Khaleel Mohiuddin is a former employee of Lifestyle who held the position of Vice-President of Finance, Asset Management.

{¶ 3}   Appellant was hired by Lifestyle in July 2016.  Lifestyle uses a third-party, cloud-based service called Taleo in connection with recruitment and onboarding of employees.  Prior to being hired, job applicants such as appellant are able to apply for open positions with Lifestyle via the Taleo website. In addition, Lifestyle uses the Taleo website to send offer-of-employment letters to candidates, and candidates who accept offers of employment complete their onboarding paperwork through the Taleo website.

{¶ 4}   In order to apply for a position with Lifestyle using the Taleo website, a job candidate such as appellant must set up his own account by creating a username and password.  Once the account is set up, a candidate is able to submit his resume and other application materials by uploading them through the Taleo online portal. Taleo does not provide the login credentials of its users to Lifestyle, and Lifestyle is not able to log into a candidate's or employee's personal Taleo account.

{¶ 5}   When Lifestyle extended an offer of employment to appellant, it delivered various employment documents to him through the Taleo platform, including an offer letter, tax withholding forms, direct deposit authorization, and the Arbitration Agreement that is at issue in this matter. The Taleo website permits new hires, including appellant, to review the documents transmitted through the online portal and electronically sign those documents requiring the newly hired employee's signature.

{¶ 6}   A Taleo user, including appellant, electronically signs a document by entering his first and last name, username, password, and the date of signing, and then clicking a button that says "e-Sign it!"  When electronically signing a document, the Taleo website also provides an alert to the user that "[f]illing in the following information sill constitute your e-Signature and will have the same legal impact as signing a printed version of this document."  The Taleo system creates a unique "Esign ID" for each electronic signature and appends an "Electronic Signature" page to the document which has been electronically signed.  The Taleo system also adds a header to each page of the

electronically signed document identifying the employee's name, Esign ID, and date of signing.

{¶ 7} One of the employment documents transmitted pursuant to the foregoing process by Lifestyle to appellant and which appellant was asked to, and did, electronically sign, was the Arbitration Agreement at issue in this matter. Both a copy of the "Electronic Signature" page from appellant's electronically signed Arbitration Agreement and a copy of one of the page headers from appellant's electronically signed Arbitration Agreement was provided by Lifestyle as part of its Motion to Compel Arbitration and Stay Proceedings. The foregoing shows that appellant electronically signed the Arbitration Agreement on July 19, 2016. Appellant also electronically signed a Confidentiality Agreement on July 6, 2016.

{¶ 8} Appellant resigned from his position with Lifestyle in May 2019. Following appellant's resignation, Lifestyle learned that appellant had accepted employment with a competitor of Lifestyle, allegedly in violation of appellant's restrictive covenants. Lifestyle further alleges that shortly before appellant left his employment with Lifestyle, he sent several files containing confidential, commercially sensitive information belonging to Lifestyle to appellant's personal email account.

{¶ 9} On August 27, 2019 Lifestyle filed a complaint in the Franklin County Court of Common Pleas. (*See generally* Aug. 27, 2019 Compl.) An amended complaint was filed on September 3, 2019, naming Builder's Resource Group, Inc., and Lifestyle Residential Properties, Ltd. as additional plaintiffs. (*See generally* Sept. 3, 2019 Am. Compl.) The amended complaint seeks equitable relief to prevent the disclosure of Lifestyle's confidential information to appellant's new employer, including specific performance as a remedy for appellant's breach of the Confidentiality Agreement and an Equity Appreciation Plan Agreement, an injunction to prevent the disclosure and misappropriation of Lifestyle's Trade Secrets pursuant to R.C. 1333.62, and attorney fees and expenses pursuant to R.C. 1333.64(C).

{¶ 10} On October 1, 2019, appellant filed a counterclaim asserting claims for declaratory judgment, discrimination, and intentional interference with contract. (*See generally* Oct. 1, 2019 Countercl.) In response, on October 29, 2019, Lifestyle filed its Motion to Compel Arbitration and Stay Proceedings Regarding [Appellant's]

Counterclaim. On January 6, 2020, the trial court issued a decision and entry which granted the motion of Lifestyle and ordered the proceedings stayed pending arbitration. The trial court found that the Arbitration Agreement was enforceable and that all of appellant's counterclaims were arbitrable and encompassed by the language of the Arbitration Agreement.

{¶ 11} This timely appeal followed.

## II. Assignments of Error

{¶ 12} On appeal, appellant assigns the following four errors for our review:

[I.] The Trial Court erred in granting the Appellees' Motion to Compel Arbitration of Mr. Mohiuddin's Counterclaim because Mr. Mohiuddin and Lifestyle are not parties to the proffered Arbitration Agreement.

[II.] The Trial Court erred by applying policies favoring arbitration before determining whether there was an enforceable contract between Mr. Mohiuddin and Lifestyle.

[III.] The Trial Court erred because, even if the Arbitration Agreement were a valid contract, it was not assented to by either Lifestyle or Mr. Mohiuddin.

[IV.] The Trial Court erred in ruling that the Plaintiffs' claims against Mr. Mohiuddin could be handled separately from Mr. Mohiuddin's Counterclaims that are essential to his defense of Lifestyle's claims against him.

## III. Standard of Review

{¶ 13} Generally, an appellate court reviews an order granting a motion to stay proceedings pending arbitration for abuse of discretion. *Wolfe v. J. C. Penney Corp.*, 10th Dist. No. 18AP-70, 2018-Ohio-3881, ¶ 9, citing *State Dept. of Adm. Servs. v. Design Group, Inc.*, 10th Dist. No. 07AP-215, 2007-Ohio-6278, ¶ 15. However, when the appeal presents a question of law, the de novo standard of review is appropriate. *Id.*, citing *Campinha-Bacote v. AT&T Corp.*, 10th Dist. No. 16AP-889, 2017-Ohio-5608, ¶ 6. The interpretation and construction of contracts requires a de novo standard of review. *Id.*, citing *State Dept. of Adm. Servs.* at ¶ 15. The issue of whether a party has agreed to submit an issue to arbitration is also subject to a de novo standard of review. *Id.*, citing *Campinha-Bacote*, at ¶ 7; *Ohio Plumbing, Ltd. v. Fiorilli Constr., Inc.* 8th Dist. No.

106242, 2018-Ohio-1748, ¶ 9, citing *McCaskey v. Sanford-Brown College*, 8th Dist. No. 97261, 2012-Ohio-1543, ¶ 7-8.

**IV. Law and Analysis**

{¶ 14} We have previously observed that " '[b]oth the Ohio General Assembly and Ohio courts have expressed a strong public policy favoring arbitration.' " *Stoner v. Salon Lofts, LLC,* 10th Dist. No. 13AP-437, 2014-Ohio-796, ¶ 13, quoting *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, ¶ 15, citing R.C. Chapter 2711, *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, ¶ 27, and *Williams v. Aetna Fin. Co.,* 83 Ohio St.3d 464, 471 (1998). " ' "Arbitration is favored because it provides the parties thereto with a relatively expeditious and economical means of resolving a dispute." ' " *Id.*, quoting *Kelm v. Kelm,* 68 Ohio St.3d 26, 29 (1993), quoting *Schaefer v. Allstate Ins. Co.*, 63 Ohio St.3d 708, 712 (1992). " 'Arbitration also has the additional benefit of unburdening crowded court dockets.' " *Id.*, quoting *Hayes* at ¶ 15, citing *Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities v. Mahoning Cty. TMR Edn. Assn.*, 22 Ohio St.3d 80, 83 (1986). " 'In light of the strong presumption favoring arbitration, all doubts should be resolved in its favor.' " *Id.*, quoting *Hayes* at ¶ 15, citing *Ignazio v. Clear Channel Broadcasting, Inc.*, 113 Ohio St.3d 276, 2007-Ohio-1947, ¶ 18.

{¶ 15} The Ohio General Assembly has evinced its endorsement of the strong public policy favoring arbitration via R.C. 2711.01(A), which provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract." *Stoner* at ¶ 14, citing *Hayes* at ¶ 16. Further, under R.C. 2711.02, a trial court is authorized to stay an action pending arbitration if the trial court is satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration. *Wolfe*, 2018-Ohio-3881 at ¶ 10, citing *ACRS, Inc. v. Blue Cross & Blue Shield*, 131 Ohio App.3d 450, 455 (8th Dist.1998).

{¶ 16} R.C. 2711.02(B) provides as follows:

> If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement,

provided the applicant for the stay is not in default in proceeding with arbitration.

{¶ 17} When a claim falls within the scope of an arbitration provision, a presumption favoring arbitration over litigation arises. *Pyle v. Wells Fargo Fin.,* 10th Dist. No. 05AP-644, 2005-Ohio-6478, ¶ 12, citing *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 471 (1998). Furthermore, the presumption arises even when the case involves some arbitrable and some non-arbitrable claims–the non-arbitrable claims being determined by a court following the completion of arbitration. *Id.,* citing *DH-KL Corp. v. Stampp Corbin Corp.*, 10th Dist. No. 97APE02-206 (Aug. 12, 1997). " 'An arbitration agreement will be enforced unless the court is firmly convinced that (1) the clause is inapplicable to the dispute or issue in question or (2) the parties did not agree to the clause.' " *Doe v. Vineyard Columbus*, 10th Dist. No. 13AP-599, 2014-Ohio-2617, ¶ 14, quoting *Estate of Brewer v. Dowell & Jones, Inc.*, 8th Dist. No. 80563, 2002-Ohio-3440, ¶ 7, citing *Ervin v. Am. Funding Corp.*, 89 Ohio App.3d 519 (12th Dist.1993).

{¶ 18} Nevertheless, when a party applies for a stay of litigation pending arbitration pursuant to R.C. 2711.02, a trial court must first determine whether the parties agreed to submit the matter to arbitration. *Campinha-Bacote*, 2017-Ohio-5608 at ¶ 8, citing *Vineyard Columbus* at ¶ 15. "Arbitration is a matter of contract and a party cannot be required to submit a dispute to arbitration when it has not agreed to do so." *Id.,* citing *Academy of Med. v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 2006-Ohio-657, ¶ 11. Therefore, a court is required to " ' "look first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement." ' " *Id.,* quoting *White v. Equity, Inc.*, 191 Ohio App.3d 141, 2010-Ohio-4743, ¶ 19 (10th Dist.), quoting *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294, 122 S.Ct. 754 (2002).

{¶ 19} A valid and enforceable contract requires an offer by one party and an acceptance of the offer by another party. *Id.* at ¶ 9, citing *Huffman v. Kazak Bros.*, 11th Dist. No. 2000-L-152 (Apr. 12, 2002), citing *Camastro v. Motel 6 Operating, L.P.*, 11th Dist. No. 2000-T-0053 (Apr. 27, 2001). To create a proper offer and acceptance, there must be a meeting of the minds. *Id.,* citing *Huffman*. " 'In order for a meeting of the minds to occur, both parties to an agreement must mutually assent to the substance of the exchange.' " *Id.,* quoting *Miller v. Lindsay-Green, Inc.*, 10th Dist. No. 04AP-848, 2005-Ohio-6366, ¶ 63.

### A.  First Assignment of Error

{¶ 20} In his first assignment of error, appellant asserts the trial court erred in granting Lifestyle's motion to compel arbitration because neither appellant nor Lifestyle are parties to the Arbitration Agreement.  We do not agree.

{¶ 21} In support of this assignment of error, in essence, appellant argues that because the Arbitration Agreement contains a "blank" for the date signed and a "blank" for the employee's name, and further because Lifestyle is not named as a party, there is no valid contract.  As explained below, this argument fails.

{¶ 22} First, the Arbitration Agreement clearly names Builders Resource Group, Ltd, "or one of its affiliates," as a party.  And, both Lifestyle's Amended Complaint and appellant's Counterclaim allege that the three entities One Lifestyle, Ltd., Builders Resource Group, Ltd., and Lifestyle Residential Properties, Ltd. are affiliates of each other and are bringing the suit as the employer (in the case of the Amended Complaint) and against the employer (in the case of the Counterclaim).

{¶ 23} Second, the Ohio cases upon which appellant relies for his argument that no valid contract arises where an agreement contains "blank spaces" for where the parties' names should be inserted are readily distinguishable from the instant matter.  In the cases cited by appellant, the party filing the motion to stay pending arbitration to enforce the arbitration clause contained within the contract was neither named in the granting clause, nor a signatory to the contract.  In other words, there was only a blank with no entity named in the granting clause, and in addition, no signature on behalf of the entity.  In this case, at least one of the entities seeking to enforce the arbitration clause–Builders Resource Group–*is* named in the granting clause. Furthermore, in *Cremeans v. Heartland of Chillicothe OH, L.L.C.*, 4th Dist. No. 17CA3589, 2017-Ohio-9399, the plaintiff was not a party to the contract at all, and therefore the arbitration clause could not be enforced against it in any event.[2]

---

[2] In *Cremeans*, the contract was signed by a resident of a nursing home upon her admission to the home, and after her death a lawsuit for wrongful death against the nursing home was brought by the executor of her estate, who was never a party to the contract.

{¶ 24} Third, we find the fact that no representative of Builders Resource Group signed the Arbitration Agreement is immaterial because an arbitration provision can be enforced by a party even when that party has not signed the contract.  As the court in *Ross v. Bridgewater Constr., Inc.,* 6th Dist. No. L-03-1029, 2003-Ohio-6199, ¶ 11, explained:

> Ohio courts have addressed this issue and have held that an arbitration clause in a contract is enforceable regardless of whether the party seeking to compel arbitration signed the agreement. *Brumm v. McDonald & Co. Securities, Inc.,* [78 Ohio App.3d 96, 104 (4th Dist.1992)]. As noted in *Brumm*, an agreement to submit to arbitration must be in writing in order for it to be enforceable under R.C. 2711. *Id.* at 102. *Brumm* further noted, however, that **R.C. 2711.02 and 2711.03 do not require signatures** on the written agreements. *Id.* at 103. Federal courts, in construing similar provisions under the Federal Arbitration Act, have consistently held that to enforce an arbitration clause it is only necessary that the provision be in writing, and that it is not required that such writing be signed. *See, e.g., Med. Dev. Corp. v. Indus. Molding Corp.* (C.A. 10, 1973), 479 F.2d 345, 348; *Fisser v. Internatl. Bank* (C.A. 2, 1960), 282 F.2d 231, 233. *Fisser, supra*, explained that since the Federal Arbitration Act requires only that the arbitration provision itself be in writing, ordinary contract principles determine who is bound by such written provisions, and notes that parties can become contractually bound absent their signatures. *Fisser* at 233.

(Emphasis added.)

{¶ 25} Finally, appellant's argument that he is not a party to the agreement is both disingenuous and incorrect.  As is argued by Lifestyle, appellant's electronic signature on the document wholly belies his position.  The Arbitration Agreement clearly states it is between "Employer" and "Employee," appellant does not dispute that he accepted employment with Lifestyle, and appellant does not dispute that he electronically signed the agreement.  His electronic signature "is sufficient to demonstrate that [he] agreed to arbitration."  *Wolfe*, 2018-Ohio-3881 at ¶ 17.

{¶ 26} Appellant's first assignment of error is overruled.

### B.  Second Assignment of Error

{¶ 27} In his second assignment of error, appellant contends that the trial court erred by applying policies favoring arbitration before determining whether there was an

enforceable contract between appellant and Lifestyle. We find no merit in this assignment of error.

{¶ 28} A review of the trial court's decision and entry shows that on page four, in the first full paragraph, the trial court clearly and correctly set forth the law regarding the requirement that a court must first determine whether the parties agreed to arbitrate their dispute. In the next paragraph, the court analyzed whether the Arbitration Agreement is a valid contract and finds that the parties agreed to arbitration. It is true that the trial court set forth the law concerning the strong public policy favoring arbitration prior to this point in the decision and entry–specifically, on page three. However, this is of no import. In the end, the trial court set forth and applied the appropriate law and made a finding that there was a valid, enforceable contract.

{¶ 29} Appellant's second assignment of error is overruled.

### C. Third Assignment of Error

{¶ 30} In his third assignment of error, appellant asserts the trial court erred because, even if the Arbitration Agreement were a valid contract, it was not assented to by either Lifestyle or appellant. We disagree.

{¶ 31} Appellant argues that his electronic signature was merely an "acknowledgement" that he had received a copy of the Arbitration Agreement and did not signify his assent to be bound by its contents. The case upon which appellant relies in support of this argument, *Harmon v. Philip Morris Inc.,* 120 Ohio App.3d 187 (8th Dist. 1997), is inapposite. *Harmon* involved an employee who signed an acknowledgement that he had received a copy of an employee manual that contained an arbitration provision. That is not this case. In this case, appellant electronically signed the Arbitration Agreement and, as stated previously, his electronic signature "is sufficient to demonstrate that [he] agreed to arbitration." *Wolfe*, 2018-Ohio-3881 at ¶ 17.

{¶ 32} Appellant's third assignment of error is overruled.

### D. Fourth Assignment of Error

{¶ 33} In his fourth assignment of error, appellant contends that the trial court erred in ruling that Lifestyle's claims against appellant could be handled separately from appellant's counterclaims "that are essential to his defense of Lifestyle's claims against him." This assignment of error is meritless.

{¶ 34} First, as pointed out by Lifestyle, the concept of "prejudice" in the context of whether an arbitration provision should be enforced arises only when there is an issue of waiver, i.e., whether the party seeking to enforce arbitration has somehow acted inconsistently with its right to force arbitration. In the trial court, appellant argued that Lifestyle had waived its right to enforce the arbitration provision, but he has not raised this issue on appeal. Therefore, prejudice is not a relevant consideration here.

{¶ 35} Furthermore, in any event, we are wholly unpersuaded by appellant's position that his counterclaims are intertwined with Lifestyle's claims. Lifestyle brought claims for breach of the parties' Confidentiality Agreement and pursuant to Ohio's Trade Secrets statute because it believed that, following appellant's acceptance of a new position with a competitor, appellant was providing confidential information which belonged to Lifestyle to the competitor in breach of the Confidentiality Agreement. In contrast, appellant's counterclaims are premised on alleged discrimination which occurred during the course of his employment with Lifestyle. These two sets of claims are completely unrelated to each other. Indeed, even if appellant were to prevail on his counterclaims, appellant would not be excused from his obligations under the Confidentiality Agreement not to reveal confidential information and/or trade secrets, nor would he be entitled to breach his Restrictive Covenant not to accept employment with a competitor in the first instance. In short, there simply is no reason that appellant would be prejudiced by having to arbitrate his own claims and then defend against the claims of Lifestyle in court.

{¶ 36} Appellant's fourth assignment of error is without merit, and it is hereby overruled.

**V. Disposition**

{¶ 37} Having overruled appellant's four assignments of error, the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

KLATT, J and BROGAN, J., concur.

BROGAN, J., retired, of the Second Appellate District, assigned
to active duty under Section 6(C), Article IV, Ohio Constitution.

_____