[Cite as *O'Brien & Assocs. Co., L.P.A. v. E. Worthington, L.L.C.*, 2023-Ohio-3494.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Kevin O'Brien & Associates Co., L.P.A., :

    Plaintiff-Appellant, :

                                              No. 22AP-700

v. : (C.P.C. No. 21CV-6186)

East Worthington, L.L.C. et al., : (REGULAR CALENDAR)

    Defendants-Appellees. :

---

D E C I S I O N

Rendered on September 28, 2023

---

**On brief:** *Jeffrey A. Catri Co., L.L.C.*, and *Jeffrey A. Catri*, for appellant.

**On brief:** *Kohl & Cook Law Firm, L.L.C., Jessica N. Rowland*, and *Sean M. Kohl*, for appellees.

---

APPEAL from the Franklin County Court of Common Pleas

LELAND, J.

{¶ 1} Plaintiff-appellant, Kevin O'Brien & Associates Co., L.P.A., appeals from a judgment of the Franklin County Court of Common Pleas granting the motion to compel arbitration and stay proceedings filed by defendants-appellees, Cross Key Management, L.L.C., Bryden Management, L.L.C., and Elite Management Holdings, L.L.C. (collectively "appellees").

## I. Facts and Procedural History

{¶ 2} On September 29, 2021, appellant filed a complaint naming as defendants East Worthington, L.L.C., Cross Key Management, L.L.C. (individually "Cross Key"), Winterwood Management, L.L.C., Bryden Management, L.L.C. (individually "Bryden Management"), and Elite Management Holdings, L.L.C. (individually "Elite Management"). The complaint alleged "[appellees] all operate apartment complexes

located in Franklin County," and "the parent company for all of the [appellees] is Elite Management." (Compl. at 2.) It was further alleged Elite Management approached appellant in May 2016 "about handling the evictions for [appellees], herein," and that appellant "and [appellees] entered into a contract for [appellant] to represent [appellees] and to handle [appellees'] evictions (and other cases) on a flat fee per case basis." (Compl. at 3-4.) Attached to appellant's complaint as "Exhibit 5" was a copy of an engagement letter ("engagement letter"), dated May 2, 2016. According to the complaint, "[appellees] have breached their contract" with appellant by refusing to pay bills for work performed in eviction cases. (Compl. at 4.) Appellant sought "judgment against [appellees], jointly and severally," in the amount of $17,627. (Compl. at 4.)

{¶ 3} On November 16, 2021, appellant filed a motion for default judgment against Elite Management. On March 4, 2022, appellees filed a combined memorandum in opposition to appellant's motion for default judgment and motion for leave to file an answer. In their memorandum in support, appellees asserted appellant had not completed service on any of the appellees.

{¶ 4} On May 6, 2022, appellees Cross Key, Bryden Management, and Elite Management filed a motion to stay proceedings, compel arbitration, and to appoint an arbitrator. In their memorandum in support, appellees argued the agreement entered into between appellant and appellees, "attached to [appellant's] Complaint as Exhibit 5," contained an enforceable arbitration provision. (Appellees' Mot. to Compel Arbitration at 2.)

{¶ 5} On May 13, 2022, appellant filed a memorandum contra appellees' motion to compel arbitration. In its memorandum in support, appellant argued that neither the owner of Elite Management, "nor anyone else at Elite Management," ever signed the engagement letter containing the arbitration provision. (Appellant's Memo Contra Mot. to Compel Arbitration at 2.) On May 16, 2022, appellees filed a reply in support of their motion to compel arbitration.

{¶ 6} On October 18, 2022, the trial court filed an entry denying appellant's motion for default judgment and granting appellees' motion to compel arbitration and to stay proceedings pending arbitration.

## II. Assignment of Error

{¶ 7}   On appeal, appellant assigns the following sole assignment of error for our review:

> THE TRIAL COURT ERRED IN REFERRING THE INSTANT
> CASE TO BINDING ARBITRATION.

## III. Analysis

{¶ 8}   Under its single assignment of error, appellant asserts the trial court erred in staying the case and referring it to arbitration.  Appellant argues appellees are seeking to enforce an arbitration provision in a contract that was not signed by any of the appellees. Appellant further contends the only appellee named in the engagement letter was Elite Management and that, even if the arbitration agreement applies to that entity, it does not apply to any other appellee.

{¶ 9}   Under R.C. 2711.02(B), a trial court is permitted "to grant a stay pending arbitration if it finds that (1) 'the issue involved in the action is referable to arbitration under an agreement in writing for arbitration' and (2) 'the applicant for the stay is not in default in proceeding with arbitration.' "  *Debois*, *Inc. v. Guy*, 8th Dist. No. 108943, 2020-Ohio-4989, ¶ 24, quoting R.C. 2711.02(B).

{¶ 10} This court has recognized " '[b]oth the Ohio General Assembly and Ohio courts have expressed a strong public policy favoring arbitration.' "  *Crosscut Capital, L.L.C. v. DeWitt*, 10th Dist. No. 20AP-222, 2021-Ohio-1827, ¶ 10, quoting *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, ¶ 15, citing R.C. Chapter 2711.  In this respect, " ' "[a]rbitration is favored because it provides the parties thereto with a relatively expeditious and economical means of resolving a dispute." ' "  *Id.*, quoting *Kelm v. Kelm*, 68 Ohio St.3d 26, 29 (1993), quoting *Schaefer v. Allstate Ins. Co.*, 63 Ohio St.3d 708, 712 (1992).  Further, arbitration " 'has the additional benefit of unburdening crowded court dockets.' "  *Id.*, quoting *Hayes* at ¶ 15, citing *Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities v. Mahoning Cty. TMR Edn. Assn.*, 22 Ohio St.3d 80, 83 (1986). Accordingly, " '[i]n light of the strong presumption favoring arbitration, all doubts should be resolved in its favor.' "  *Id.*, quoting *Hayes* at ¶ 15, citing *Ignazio v. Clear Channel Broadcasting, Inc.*, 113 Ohio St.3d 276, 2007-Ohio-1947, ¶ 18.

{¶ 11} In general, "the standard of review for a decision denying or granting a motion to compel arbitration and stay proceedings is whether the trial court abused its discretion." *Boggs v. Columbus Steel Castings Co.*, 10th Dist. No. 04AP-1239, 2005-Ohio-4783, ¶ 5, citing *Tinker v. Oldaker*, 10th Dist. No. 03AP-671, 2004-Ohio-3316, ¶ 5. However, a reviewing court "employs a de novo standard of review where the appeal of a motion to stay proceedings pending arbitration presents a question of law." *Michigan Timber & Truss, Inc. v. Summit Bldg. Servs., L.L.C.*, 10th Dist. No. 20AP-557, 2021-Ohio-3158, ¶ 10, citing *Morris v. Morris*, 189 Ohio App.3d 608, 2010-Ohio-4750, ¶ 15 (10th Dist.). Accordingly, " ' "[a] trial court's decision granting or denying a stay of proceedings pending arbitration is * * * subject to de novo review on appeal with respect to issues of law, which commonly will predominate because such cases generally turn on issues of contractual interpretation or statutory application." ' " *Id.*, quoting *Morris* at ¶ 15, quoting *Hudson v. John Hancock Fin. Servs., Inc.*, 10th Dist. No. 06AP-1284, 2007-Ohio-6997, ¶ 8.

{¶ 12} Appellant initially argues "no written attorney-client contract (engagement letter/contract) exists" between appellant and any of the appellees. (Appellant's Brief at 6.) According to appellant, its lawsuit "is for breach of an oral contract." (Appellant's Brief at 6.)

{¶ 13} Appellant's contention that its claim for breach of contract is based on an oral contract and not a written agreement is belied by its own complaint. According to the complaint, in "May, 2016," appellant and appellees "entered into a contract" for appellant to represent appellees. (Compl. at 2-3.) It was further alleged that appellant "entered into the contract referenced above with Sam Pessar, owner of Elite Management * * * and that the cases of [appellees] (apartment complexes) * * * were referred to [appellant] for eviction * * * at a later date, Exhibit 5." (Compl. at 3-4.)

{¶ 14} Appellant attached to its complaint a copy of the engagement letter prepared by appellant. The engagement letter, addressed to Pessar, states in part "[t]his letter confirms that you have retained our firm as legal counsel and summarizes the scope and terms of our representation," and further provides "[t]his agreement supersedes any prior written or oral agreements and constitutes the entire agreement of the parties." (Engagement Letter at 1.) The engagement letter also contains an arbitration clause, stating the parties agree to participate in the Columbus Bar Association Fee Arbitration Program

"[i]n the event a dispute arises." (Engagement Letter at 3.) The document is signed by Kevin O'Brien on behalf of appellant.

{¶ 15} We further note appellant did not raise the issue of breach of an oral agreement in either its complaint or its filings before the trial court. Instead, in its memorandum contra appellees' motion to compel arbitration, appellant again referenced the engagement letter attached to its complaint, asserting "the parties had a contract for [appellant] to file evictions for [appellees]," appellees "breached their agreement" with appellant, and that the "contract * * * was memorialized in an engagement letter to Elite Management * * * on May 2, 2016." (Pltf.'s Memo Contra Defts.' Mot. to Compel Arbitration at 2.)

{¶ 16} Here, a review of appellant's complaint indicates its breach of contract claim is based on allegations appellees failed to meet their obligations under the identified engagement letter, and we note appellant did not seek leave to amend its pleadings to allege breach of an oral contract. Appellant's belated attempt to assert breach of a purported oral agreement, raised for the first time on appeal, is not properly before this court for review and such assertion is, nevertheless, contradicted by appellant's own pleading. *See*, *e.g.*, *Dunham v. Dunham*, 171 Ohio App.3d 147, 2007-Ohio-1167, ¶ 69 (10th Dist.) ("It is well-established that arguments not raised in the trial court, and raised for the first time on appeal, need not be considered.").

{¶ 17} Appellant also argues the only appellee named in the engagement letter is Elite Management, and the engagement letter is not signed by any of the appellees. Appellant acknowledges, however, "[h]aving done further research into this issue," that it agrees with the trial court that "it is not required that the agreement be signed by the parties." (Appellant's Brief at 7.) Appellant maintains, however, even if the arbitration agreement applies to Elite Management, it does not apply to any other appellee as only Elite Management is named in the engagement letter.

{¶ 18} Appellant properly acknowledges Ohio case law for the proposition that, while "an agreement to submit to arbitration must be in writing in order for it to be enforceable under R.C. Chapter 2711," there is "nothing" in the statutory provisions "which require signatures to be on those written agreements." *Brumm v. McDonald & Co. Secs., Inc.*, 78 Ohio App.3d 96, 102 (4th Dist.1992) (further noting that federal courts, in

construing "similar provisions under the Federal Arbitration Act, * * * have consistently held that, to enforce an arbitration clause, it is only necessary that the provision be in writing and it is not required that such writing be signed"). *See also One Lifestyle, Ltd. v. Mohiuddin*, 10th Dist. No. 20AP-72, 2021-Ohio-1594, ¶ 24 ("the fact that no representative of [the plaintiffs] signed the Arbitration Agreement is immaterial because an arbitration provision can be enforced by a party even when that party has not signed the contract").

{¶ 19} In *Seventh Appellate Dist. Mahoning Cty. Starr Constr. & Demo v. D.A. Bentley Constr.*, 7th Dist. No. 21 MA 0037, 2022-Ohio-1122, a trial court denied a defendant's motion to stay pending arbitration because the contract containing the arbitration clause was not signed by the defendant. Under the facts of that case, the "lacking signature" (of the defendant) was "that of the party seeking to enforce the agreement" against "the party who did sign it [i.e., the plaintiff] and who filed a complaint based on an attached written agreement containing the arbitration clause." *Id.* at ¶ 25. On appeal, the reviewing court reversed, relying on Ohio case law to find the lack of the defendant's signature did not preclude the defendant from seeking a stay, and noting the trial court had the plaintiff's "own statement that the written contract was valid as they were seeking to enforce it in their complaint, and [the plaintiff] signed the contract containing the arbitration clause." *Id.* at ¶ 34.

{¶ 20} Similarly, in the present case, the trial court, in addressing appellant's argument that the engagement letter was not countersigned, noted appellant attached to the complaint the "four page 'Engagement Letter,' " and "the complaint uniformly refers to the fact * * * the parties 'entered into the contract.' " (Trial Court Journal Entry at 1.) Further, the engagement letter containing the arbitration clause was signed by appellant. The trial court concluded "there is a legally enforceable contract here notwithstanding that it was never countersigned." (Trial Court Journal Entry at 1.) We find no error with that determination.

{¶ 21} While the record indicates appellant asserted before the trial court that none of the appellees had signed the engagement letter containing the arbitration clause, appellant advances an argument on appeal different from the one he presented before the trial court, i.e., appellant now contends the engagement letter is between appellant and Elite Management only, and that "[n]one of the other [a]ppellees, which are all independent

limited liability companies, are named in the Letter." (Appellant's Brief at 4.) Appellant maintains Elite Management is the only "legal entity" that is a party to the engagement letter. (Appellant's Brief at 9.)

{¶ 22} While appellant failed to argue before the trial court that Elite Management was the only "legal entity" that was a party to the engagement letter, nor did appellant more broadly argue that the arbitration provision in the agreement is not enforceable by a legal entity not a party to the agreement, we will consider those arguments on appeal as appellant attempts to raise a subject-matter jurisdiction issue.

{¶ 23} Appellant relies in part on *St. Vincent Charity Hosp. v. URS Consultants, Inc.*, 111 Ohio App.3d 791, 793 (8th Dist.1996), in which the Eighth District Court of Appeals held that a successor consultant, not being a party to a prior contract between a plaintiff and a predecessor consultant, could not enforce that contract's arbitration clause because there was no evidence the successor assumed the liabilities of the predecessor under the contract or that the contract was formally assigned to the successor. While the facts of that case are distinguishable from the instant action, we note *URS Consultants* stands for the more general proposition that "parties cannot be compelled to arbitrate a dispute which they have not agreed to submit to arbitration." *Id.* at 793. That case does not address, however, the specific issue relevant to appellant's argument here, i.e., whether there are circumstances under which a non-party (or non-signatory) to a contract may seek to enforce an arbitration provision against a signatory.

{¶ 24} On this issue, Ohio and federal courts recognize that a non-party or non-signatory to an agreement may enforce an arbitration provision against a signatory in several circumstances, including under the theory of equitable estoppel. Under this theory, Ohio courts have held "arbitration may be compelled by a nonsignatory against a signatory due to the 'close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract, * * * and [the fact that] the claims were "intimately founded in and intertwined with the underlying contract obligations." ' " *I Sports v. IMG Worldwide, Inc.*, 157 Ohio App.3d 593, 2004-Ohio-3631, ¶ 14 (8th Dist.), quoting *Thomson-CSF, S.A. v. Am. Arbitration Assn.*, 64 F.3d 773, 779 (2d Cir.1995), quoting *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir.1993). *See also U.S. Bank, N.A. v. Wilkens*, 8th Dist. No. 96617, 2012-

Ohio-1038, ¶ 54, quoting *I Sports* at ¶ 24, quoting *Thomson-CSF* ("A signatory to an arbitration agreement cannot avoid arbitration with a nonsignatory ' "when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement" ' that the signatory signed."). Courts recognize that "under this theory, because an individual defendants' allegedly wrongful acts relate to their actions as agents of a company that was a party to an arbitration agreement, the nonsignatory agents should also have the benefit of the arbitration agreement made by their principal." *Fields v. Herrnstein Chrysler, Inc.*, 4th Dist. No. 12CA827, 2013-Ohio-693, ¶ 17.

{¶ 25} Courts have applied the doctrine of equitable estoppel to compel a signatory plaintiff to arbitrate its claims against a non-signatory parent or subsidiary. *See Metalclad Corp. v. Ventana Environmental Organizational Partnership*, 109 Cal.App.4th 1705, 1717-18 (2003), quoting *Sunkist Soft Drinks* at 757 (doctrine of equitable estoppel precluded the plaintiff from raising the parent company's non-signatory status to oppose arbitration where the plaintiff's breach of contract claim against the parent company "could not be more 'intimately founded in and intertwined with' the underlying * * * contract" between the plaintiff and subsidiary); *I-Link Inc. v. Red Cube Intl. AG*, D.Utah No. 2:01CV049K (Feb. 9, 2001) (rejecting signatory plaintiff's argument it could not be compelled into arbitration with non-signatory subsidiary where claims of subsidiary were intertwined with agreement signed by the plaintiff and parent company); *In re: Thixomat, Inc. v. Takata Physics Internatl. Co., Ltd.*, S.D.N.Y. No. 01 Civ. 5449 (RO) (July 30, 2001) ("Given * * * close connection between the alleged wrongs, the relationship of the entities and the fact that the 'claims were intimately founded in and intertwined with the underlying contract obligations,' " the plaintiff "must arbitrate" its claims with non-signatory subsidiary.).

{¶ 26} In the present case, appellant's complaint relies on "the contract" (attached to the complaint and identified as exhibit 5) in seeking to hold all appellees liable for breach of that agreement. (Compl. at 4.) The complaint further alleges Elite Management is "the parent company for all of the [d]efendants." (Compl. at 2.) According to the complaint, "[appellant] and [appellees] entered into a contract for [appellant] to represent [appellees]," and "[appellees] have breached their contract with [appellant] in that [appellees] have failed and refused to pay the bills." (Compl. at 2-4.) The complaint, which

only references the contract attached to the complaint, i.e., the engagement letter, does not allege any other separate contracts with any of the appellees.

{¶ 27} Appellant "[i]n essence" seeks to hold appellees liable for breach of contract based on obligations arising out of the engagement letter, while at the same time attempting to avoid any obligation under the agreement to arbitrate, a situation federal courts have observed " 'is hardly unknown in the context of arbitration agreements.' " *Borsack v. Chalk & Vermillion Fine Arts, Ltd.*, 974 F.Supp. 293, 299 (S.D.N.Y.1997), quoting *Filanto, S.p.A. v. Chilewich Internatl. Corp.,* 789 F.Supp. 1229, 1240 (S.D.N.Y.1992). On this point, courts have held that equitable estoppel "precludes a party from enjoying rights and benefits under a contract while at the same time avoiding its burdens and obligation." *InterGen N.V. v. Grina*, 344 F.3d 134, 145 (1st Cir.2003). *See also Ngo v. BMW of N. Am. L.L.C.*, 23 F.4th 942, 949 (9th Cir.2022), quoting *Goldman v. KPMG L.L.P.*, 173 Cal.App.4th 209, 220 (2009) (the doctrine of equitable estoppel "prevents a plaintiff from having it 'both ways' by seeking to hold a non-signatory [defendant] liable for obligations 'imposed by [an] agreement,' while at the same time 'repudiating the arbitration clause of that very agreement' " because the defendant is a non-signatory); *Muecke Co., Inc. v. CVS Caremark Corp.*, 615 Fed.Appx. 837, 842 (5th Cir.2015) ("Because the plaintiffs are suing the defendants as if the defendants were parties to the contract, the plaintiffs cannot then claim the defendants are not parties to other portions of the contract.").

{¶ 28} As set forth above, appellant's complaint asserts Elite Management is the parent company for all appellees, i.e., it specifically identifies the parent/subsidiary relationship between Elite Management and the other appellees. Further, appellant alleges it "entered into a contract" with "[d]efendants" to handle their evictions, and the complaint references obligations under "the contract" (i.e., the attached engagement letter) as the basis for the alleged breach of contract. (Compl. at 2-4.) Here, the claims by appellant, a signatory, against the non-signatory appellees " 'are integrally related to the contract containing the arbitration clause.' " *Wilkens* at ¶ 54, quoting *I-Sports* at ¶ 24-25. *See also MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir.1999), quoting *Sunkist Soft Drinks* at 758 (where "signatory's claims against a nonsignatory 'makes reference to' or 'presumes the existence of' the written agreement, the signatory's claims 'arise[] out of and relate[] directly to the [written] agreement,' and arbitration is appropriate").

{¶ 29} Upon consideration of the relationship between the entities (i.e., parent-subsidiary as alleged in the complaint), and because the issues in dispute are intertwined with the agreement containing the arbitration clause, we reject appellant's contention that appellees, as non-signatories, could not invoke the arbitration provision to compel appellant, a signatory to that agreement, to arbitrate its breach of contract claim. Accordingly, the trial court did not err in granting the motion to compel arbitration and to stay proceedings.

{¶ 30} Appellant raises a final argument in its brief, asserting appellees "have waived the right to arbitrate." (Appellant's Brief at 12.) Appellant argues appellees filed their motion to compel arbitration over seven months after appellant filed its complaint. Appellant further argues that, while appellees offered to waive service of process, appellant "sent [a]ppellees the appropriate documents to waive service and these documents were never returned [by] the [a]ppellees." (Appellant's Brief at 14.)

{¶ 31} In general, " '[a] party asserting waiver must prove that the waiving party knew of the existing right to arbitrate and, based on the totality of the circumstances, acted inconsistently with that known right.' " *Stoner v. Salon Lofts*, *L.L.C.*, 10th Dist. No. 13AP-437, 2014-Ohio-796, ¶ 16, quoting *Dispatch Printing Co. v. Recovery Ltd. Partnership*, 10th Dist. No. 10AP-353, 2011-Ohio-80, ¶ 21, citing *Murtha v. Ravines of McNaughton Condominium Assn.*, 10th Dist. No. 09AP-709, 2010-Ohio-1325, ¶ 21. A court, in addressing whether the totality of the circumstances supports a waiver finding, "may consider such factors as: (1) whether the party seeking arbitration invoked the court's jurisdiction by filing a complaint or claim without first requesting a stay; (2) the delay, if any, by the party seeking arbitration to request a stay; (3) the extent to which the party seeking arbitration has participated in the litigation; and (4) whether prior inconsistent acts by the party seeking arbitration would prejudice the non-moving party." *Id.*, citing *Dispatch Printing Co.* at ¶ 21, citing *Tinker* at ¶ 20.

{¶ 32} The trial court in this case did not address a waiver argument in its decision, presumably because, as noted by appellees, appellant failed to raise this issue before the trial court when it had the opportunity. Rather, appellant requests this court to address its waiver argument in the first instance on appeal. However, appellate courts generally "do not consider questions which have not been presented in the court whose judgment is being

challenged," and "a reviewing court need not consider any alleged error which the complaining party could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *Muhammad v. Marc Glassman, Inc.*, 8th Dist. No. 72520 (Oct. 15, 1998), citing *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 81 (1997).

{¶ 33} In light of appellant's failure to raise the waiver issue before the trial court, we decline to address it for the first time on appeal. *See York-Mahoning Mechanical Contractors, Inc. v. David E. Zofko Constr., Inc.*, 9th Dist. No. 16844 (May 31, 1995) ("Inasmuch as plaintiffs failed to raise the issue of [defendants'] waiver of their right to arbitration before the trial court, that argument will not be considered on appeal."). We further note, had appellant asserted the issue of waiver before the trial court, it would have carried a "heavy burden of proving waiver of the right to arbitration" given "the strong public policy in favor of arbitration." *Griffith v. Linton*, 130 Ohio App.3d 746, 751 (10th Dist.1998).

## IV. Conclusion

{¶ 34} Based on the foregoing, appellant's single assignment of error is without merit and is overruled. Accordingly, the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

BEATTY BLUNT, P.J., and JAMISON, J., concur.